309 So.2d 382 (1975)
Willard DOUCET et ux., Plaintiffs-Appellants,
v.
STATE of Louisiana, Through the DEPARTMENT OF HIGHWAYS, Defendant-Appellee.
No. 4863.
Court of Appeal of Louisiana, Third Circuit.
February 26, 1975.
Rehearing Denied April 2, 1975.
Writ Refused May 16, 1975.
*383 Knight & Knight by William N. Knight, Jennings, for plaintiffs-appellants.
William J. Doran, Jr., Robert J. Jones and William T. Kivett, Baton Rouge, for defendant-appellee.
Before HOOD, MILLER and WATSON, JJ.
HOOD, Judge.
Mr. and Mrs. Willard Doucet have sued the State of Louisiana, through the Department of Highways, to recover damages for personal injuries sustained by Mrs. Doucet when a pickup truck she was driving ran off a state highway and overturned. Judgment was rendered by the trial court in favor of defendant, and plaintiffs appealed.
The issues are whether the Highway Department was negligent in failing to repair some holes along the edge of the highway near the scene of the accident, and if so, whether Mrs. Doucet also was negligent thus barring plaintiffs from recovering.
The accident occurred about 3:45 P.M. on January 30, 1973, on State Highway 102, in Jefferson Davis Parish. The highway at that point is a straight, level, blacktopped, two-lane rural thoroughfare, running north and south, the traveled portion of which is about 20 feet six inches wide. The weather was clear and visibility was good. The speed limit was 60 miles per hour.
Immediately before the accident occurred, Mrs. Doucet was driving her husband's pickup truck south on that highway. Her 16 year old daughter and her son were riding as passengers in the vehicle with her. She lost control of the truck as she met an automobile being driven in the opposite direction on that highway. Her truck crossed the opposite lane of traffic, apparently sliding sideways a part of that distance, and came to rest partially overturned in a ditch on the east side of the highway. She sustained personal injuries as a result of that accident.
Mrs. Doucet testified that she was driving the truck south at a speed of about 40 or 45 miles per hour as she approached the place where the accident occurred. She saw a blue car approaching from the opposite direction on the same highway, and shortly before the vehicles met and passed each other she observed that the left front wheel of that car entered her lane of traffic. She stated that she then turned to her right to avoid striking the oncoming vehicle, that the right front wheel of her truck struck a hole in the west edge of the blacktopped slab, that that caused her to lose control of the vehicle she was driving, and that her truck then swerved to her left, crossed the highway at an angle and came to rest in a ditch on the east side of the road. She testified that she passed the blue car immediately before she swerved to her left.
Photographs taken two days after the accident occurred show some holes along the extreme west edge of the asphalt slab. The holes are partly on the shoulder and partly on the west edge of the hard surfaced part of the highway, some of the holes extending a few inches into the slab. The holes were filled with water when the pictures were taken, however, and it is impossible to determine from the photographs how deep they were. There is no other evidence in the record to show the depth or nature of those defects. The photographs indicate, however, that the holes should have been clearly visible to a motorist exercising ordinary and reasonable care.
The evidence shows that the holes which allegedly caused the mishap were located at *384 least 300 feet north of the place where the accident occurred. We based that statement largely on the testimony of the investigating officer, who stated that he examined the highway for a distance of at least 100 yards north of the point where the accident occurred, and that he observed no defects in the highway at any place within that 300 foot distance. He, in fact, stated in his report that there were no defects in the roadway.
There were some tire "scuff" marks on the highway immediately north of the place where the truck came to rest. These marks apparently were made by plaintiffs' truck, and they show that the truck traveled or slid partly sideways in a southeasterly direction, from the west to the east side of the highway, before it ran off the east edge of the asphalt slab and overturned in the ditch. The length of these scuff marks is not shown, but the evidence indicates that they began a substantial distance south of the above mentioned holes in the highway, and that there were no skid marks between the holes and the place where the scuff marks began.
Plaintiffs' daughter, a passenger in the truck, testified that she saw the blue car approaching while the two vehicles were some distance apart, that the automobile was "sort of swerving," and that on one occasion it got into plaintiff's lane of traffic. She stated, however, that after making that last observation she turned to close the vent on a window of the truck, and did not notice the automobile any more until her mother drove off the edge of the highway, starting hitting some bumps and then lost control of the truck. She stated that when her mother lost control of the truck she looked up and saw that the approaching automobile was in its proper lane of traffic.
The blue car which met and passed the Doucet truck at about the time the accident occurred was being driven by Elias Istre, who died before the case was tried. Mrs. Stella Hebert was riding as a passenger in that automobile, however, and she testified that the Istre automobile did not cross the center line at any time as it approached the Doucet truck. She stated that the Doucet truck was "wavering on the road" as the vehicles approached each other, and while they were "a good distance" apart. She testified that the truck crossed the highway "in front" of the Istre vehicle, and that it "just miss us." We interpret her testimony to be that the Doucet truck crossed the highway and ran into the ditch shortly before the vehicles met. Mrs. Hebert did not state that the Doucet truck ran off the west side of the highway and struck a hole there before it crossed to the east side. We think she would have noticed and commented on that if it had occurred, especially if the hole was deep enough to cause the driver to lose control of the vehicle.
A. W. Chaisson, maintenance superintendent of the Highway Department in Jefferson Davis Parish, testified that he inspected the highway at that point every 8 to 10 days, and that he did not see any holes in the road, or on the edge of it, at any time before this accident occurred. He stated that a considerable amount of repair work had been done on this highway between September and the middle of December, 1972, and that that work included "patching the surface, fixing the edges, cutting out depressions." He stated that he checked the highway for defects or holes every 8 to 10 days between the time the above patch work on the highway had been completed and the time this accident occurred. He did not find holes in the highway on any of those inspections. He received no complaints of any defects in that road, and no accidents occurred along that stretch before the one which precipitated this suit. Chaisson examined the highway at that point shortly after the accident occurred, and he saw the holes which Mrs. Doucet allegedly struck. He testified that holes such as that "may get like that in five days," and that "it all depends on how much traffic you got on it, *385 how much rain you got, what kind of weather you have."
Chaisson's testimony is uncontradicted that he made regular and frequent inspections of the highway at that point, that repair work had been done on that road within a period of from four to six weeks before this accident occurred, and that he had no knowledge or notice of any defect in the highway before that time. Plaintiffs concede that the evidence fails to show that the Highway Department had actual notice of the holes in the highway. They argue, however, that defendant should be held to have had constructive notice of the defects, because the photographs show that "these holes were long in the making," and that "it taxes one's credulity to believe that these holes could have been made in 10 days." We are not convinced that the testimony of Chaisson should be rejected for the reasons urged by plaintiffs.
The trial judge rejected the testimony of Mrs. Doucet as to the manner in which the accident occurred, stating that she was "a generally unreliable witness." Instead, he accepted Mrs. Stella Hebert's version of the facts. He concluded that "there was no negligence on the part of the Department of Highways," that the defendant "conducted a reasonable and regular inspection program and testimony also showed that there was no actual nor constructive knowledge of the bad condition of the road at the point of the accident," and that "even if the Department of Highways were negligent it is the opinion of this court that Mrs. Doucet was contributorily negligent." Judgment thus was rendered in favor of defendant, dismissing plaintiffs' suit.
The factual findings of the trial judge are entitled to great weight, and they will not be disturbed unless found to be clearly erroneous. Domingeaux v. Davis, 250 So.2d 432 (La.App. 3 Cir. 1971). We think the evidence supports the findings of the trial judge in the instant suit, and we thus accept his conclusions as to the facts.
The Department of Highways is not responsible for every accident which occurs on state highways. It is not a guarantor of the safety of travelers thereon, or an insurer against all injury or damage which may result from defects in the highways. The duty of the Department of Highways is only to see that state highways are reasonably safe for persons exercising ordinary care and reasonable prudence. It is liable for damages only when the evidence shows (1) that the hazardous condition complained of was patently or obviously dangerous to a reasonably careful and ordinarily prudent driver, and (2) that the department had notice, either actual or constructive, of the existence of the defect and failed within a reasonable time to correct it. Laborde v. Louisiana Department of Highways, 300 So.2d 579 (La. App. 3 Cir. 1974); Dupre v. Louisiana Department of Highways, 154 So.2d 579 (La. App. 3 Cir. 1963); Mistich v. Matthaei, 277 So.2d 239 (La.App. 4 Cir. 1973); St. Paul v. Mackenroth, 246 La. 425, 165 So.2d 273 (1964).
In St. Paul v. Mackenroth, supra, the City of New Orleans was held to have had constructive notice of a defect in a sidewalk, because the defect "had been in existence for a long period of time" and that "it was in the nature of a trap." Our Supreme Court, however, stated the applicable law as follows:
"In order to assess liability in a matter such as the instant one, it must be shown (1) that the unsound condition complained of was patently or obviously dangerous to a reasonably careful and ordinarily prudent person, and (2) that the municipality had notice, either actual or constructive, of the existence of the defect and failed within a reasonable time to correct it. `In other words, if the defect is slight, there can be no recovery and, even if it is patently dangerous, the municipality is not responsible unless it *386 has had actual notice of it or unless the condition has been permitted to remain in its dangerous state for such a length of time as to warrant the conclusion that the municipality is negligent in failing to discover and correct it.'"
The Fourth Circuit Court of Appeal stated the applicable rule correctly, we think, in Garrett v. Sewerage & Water Board of New Orleans, 235 So.2d 164 (La.App. 4 Cir. 1970), where it said:
"Our long settled jurisprudence is that in order for a public body (the defendant in this case is a public body) to be held liable for injuries caused by defects or defective conditions the plaintiff has the burden of pleading and proving both of the following: (1) such defects or conditions were patently dangerous or in the nature of a trap; and (2) the corporation had either actual or constructive notice of the same, actual notice being knowledge of the dangerous defects or conditions by a corporate officer or employee having the duty either to keep the property involved in good repair or to report defects and dangerous conditions to the proper authorities, and constructive notice being the fact that the defect or condition had existed for such a period of time it would have been discovered and repaired if the public body had exercised reasonable care."
The evidence in the instant suit is uncontradicted that the Department of Highways had no notice, either actual or constructive, of the existence of the alleged defect in the highway before this accident occurred. It made regular and frequent inspections of the highway prior to that time, and a substantial amount of repair work was performed on that particular stretch of the highway shortly before this accident happened.
We accept the testimony of the maintenance superintendent of the Highway Department, as the trial judge apparently did, that the holes which existed at the time of the accident along the west edge of the traveled portion of this road came into existence after the last regular inspection of the highway had been made.
Our conclusion is that the Highway Department is not liable for the damages sustained by plaintiffs, since it did not have actual or constructive notice of the alleged defects in the highway prior to the accident. The trial court did not err, therefore, in rejecting plaintiffs' demands.
In view of our conclusion that defendant is not liable because of lack of actual or constructive notice of the defects, it is unnecessary for us to consider or rule on the other serious defenses urged in this case.
For the reasons assigned, the judgment appealed from is affirmed. The costs of this appeal are assessed to plaintiffs-appellants.
Affirmed.