340 So.2d 588 (1976)
Sylvester WATSON
v.
J. L. MORRISON et al.
Acey L. ALLEN et al.
v.
Sylvester WATSON et al.
J. L. MORRISON
v.
DEPARTMENT OF HIGHWAYS of the State of Louisiana, et al.
Nos. 10904-10906.
Court of Appeal of Louisiana, First Circuit.
November 15, 1976.
Rehearing Denied December 20, 1976.
Writs Refused February 14, 1977.
*590 Joshua A. Tilton, Tillery, Cooper & Tilton and Byron Magbee, Baton Rouge, for Sylvester Watson, plaintiff-appellant.
Robert L. Kleinpeter, Baton Rouge, for Dixie Auto Ins. Co., instead of and in place of Mid-Continent Underwriters, Inc., defendant-appellee and for John L. Morrison, individually and as administrator of estate of minor child, Susan M. Morrison Babb and Mid-Continent Underwriters, Inc., defendant-appellee.
H. A. Mentz, Jr., Hammond, for J. L. Morrison, individually and as administrator of estate of Susan Morrison, defendant-appellee.
Ronald S. Macaluso, Dept. of Highways, Hammond, for Department of Highways of State of Louisiana, third party defendant-appellant.
John W. Anthony, Bogalusa, for Sylvester Watson, Amite Milling Co., Inc. and Continental Casualty Co., third party defendants-appellees.
John L. Avant, Baton Rouge, for Acey L. Allen, etc., plaintiff-appellant.
Before LANDRY, EDWARDS and COLE, JJ.
COLE, Judge.
A head-on collision occurred on May 12, 1971, on Louisiana Highway 1054 in Tangipahoa Parish involving a truck and an automobile. The following few facts are undisputed: Louisiana Highway 1054 is a narrow, two lane, hard surface road, twenty feet wide in the general area of and at the place of the accident. At approximately 9:35 A. M. on the morning of May 12, 1971, Sylvester Watson was driving a truck owned by his employer, Amite Milling Company, north on Louisiana Highway 1054. The road was wet, as it had been raining intermittently that morning. At the same time Susan Morrison was driving her father's automobile south on the same road on her way home from school after taking an exam that morning. With her in the car were two sisters, Sharon and Joyce Allen. She was giving them a ride home. Susan Morrison rounded a curve in the road and was proceeding along a straight section of the road going up a slight hill. Sylvester Watson was proceeding up the same hill from the opposite direction in the northbound lane. As Susan Morrison gained view over the hill of the truck proceeding toward her, she drove her car to the right, causing her right wheels to leave the paved surface of the road on the western side. The wheels of her vehicle dropped off into a rut in the shoulder of the highway approximately five inches deep and six to eight inches wide. As a result, she lost control of her vehicle and the car veered back onto the highway, crossed the center line, and collided with Watson's truck. The point of impact occurred approximately three to five feet from the center line in the northbound lane of traffic and near the crest of the hill. All three girls in the Morrison vehicle suffered extensive injuries as a result of the collision.
As a result of this accident, the following suits were filed: (1) Sylvester Watson sued J. L. Morrison as the father of his minor daughter, Susan Morrison; and Morrison's insurer, correctly impleaded as Dixie Auto Insurance Company (10,904). (2) Acey Allen, father of Sharon and Joyce, sued Sylvester *591 Watson; Watson's employer, Amite Milling; Amite's insurer, Continental Casualty Company; J. L. Morrison; Dixie; and the State through the Department of Highways (No. 10,905). (3) J. L. Morrison sued Sylvester Watson; Amite Milling; Continental; and the Department of Highways (No. 10,906). Numerous incidental demands were made among the parties.
Before trial of any of the above-mentioned suits commenced, Susan Morrison and Sharon Allen obtained majority and were substituted as proper parties where applicable. The foregoing suits were then consolidated for trial.
The trial court in written reasons found that Sylvester Watson was negligent in driving his vehicle over the center line and thereby creating a sudden emergency for Susan Morrison which caused her to respond by steering her vehicle to the right to avoid the truck. The Department of Highways was also found to be negligent in failing to maintain the road, specifically in failing to repair the drop-off along the edge of the highway which caused Susan Morrison to lose control of her vehicle. The trial court absolved Susan Morrison of any negligence in leaving the driving surface of the highway which might bar her recovery or make her liable to any of the parties.
Judgment was rendered by the trial court in No. 10,904 relieving Susan Morrison and Dixie of any liability to Watson because of his contributory negligence. In No. 10,905 judgment was rendered by the trial court holding Sylvester Watson, Amite Milling, Continental, and the Department of Highways liable in solido to Susan Morrison for injuries sustained and to J. L. Morrison for medical expenses and property damage. In No. 10,906 judgment was rendered in favor of Acey Allen for medical expenses and on behalf of his daughter, Joyce, for her personal injuries.
Numerous appeals were taken from the lower court's judgments, each involving basically a factual dispute as to how the accident occurred. Watson, Amite Milling, and Continental appeal those portions of the judgments rendered in Nos. 10,905 and 10,906 holding them liable based on the negligence of Watson in supposedly driving over the center line. Watson also appeals the judgment rendered in No. 10,904 holding him contributorily negligent and holding Susan Morrison not negligent, thereby barring any recovery by Watson. The Department of Highways appeals the judgments rendered in Nos. 10,905 and 10,906 holding the Department negligent and in No. 10,906 absolving Susan Morrison of contributory negligence.
Aside from the issues of liability, various parties appeal the awards made. Sharon and Joyce Allen claim their awards of general damages are insufficient and seek to have their awards increased. Defendants-appellants in No. 10,906 seek to have the award of general damages to Susan Morrison decreased on the basis that the award exceeded the prayer.
This Court will not attempt to address every contention of fact and law made by all of the parties on an individual basis, nor will we attempt to address each suit individually, as that would lead to a multiplicity of discussion. Furthermore, the suits were consolidated and treated at trial as one. Instead, we will address the major areas of dispute which we feel call for discussion.
Firstly, a serious question exists as to the respective negligence of the parties based upon factual disputes. Secondly, serious questions exist with regard to the awards of general damages made. On the one hand, it is alleged that certain such awards are insufficient. On the other, it is alleged that an award of general damages exceeding the amount of the prayer should be decreased.

ISSUES OF NEGLIGENCE
The question of which party or parties involved are legally culpable depends upon a resolution of the factual dispute based upon who bears the burden of persuasion. The trial judge obviously adopted Susan Morrison's version of the events leading up to the accident in concluding that Sylvester *592 Watson was negligent in driving over the center line, thereby creating a sudden emergency. This finding is based solely upon the testimony of Joyce Allen and Susan Morrison.
Susan Morrison was seventeen years of age at the time of the accident and had been a licensed driver for approximately one year. According to her testimony, she was driving about forty to forty-five miles per hour. As she rounded the curve and started up the hill, she saw the Watson truck with its wheels on her side of the center line. Consequently, she steered her vehicle to the right to give the truck clearance and when she did, her wheels fell into a drop-off. At this point, she stated that she was afraid she would hit the trees to her right, so she attempted to steer back onto the paved surface. Her fears were reasonable, as the photographs of the scene indicate that the road had no appreciable shoulder. Instead, it dropped almost directly into a ditch, with the edge of a heavily wooded area very close to the highway. In attempting to return to the paved surface, she lost control of her vehicle and veered into the on-coming vehicle. She admits that the collision occurred in Watson's lane (northbound).
When cross-examined, Susan Morrison explained that she first saw the truck approximately 500 feet away. When pressed, she would not say that she saw the center line at that distance, but only that the truck appeared to be on her side about one to one and a half feet.
Susan Morrison's testimony is subject to close scrutiny because she supposedly had no recollection of the accident from its date until she visited Dr. Joseph L. Palotta, a psychiatrist, on September 14, 1972, and September 19, 1972, and underwent hypnosis. According to Dr. Palotta, Susan came to him and said that she had no recollection about how the accident occurred. Under hypnosis, Dr. Palotta says that Susan was able to recall the event. The accuracy of her reconstructed memory, if accepted, must at least be subject to careful review and probative evaluation for several reasons. First, whether hypnosis produces truthful recollections is at best a controversial question, as even Dr. Palotta admits. Next, whether Susan's recollections under hypnosis were uncontaminated by information she had acquired from other sources since the accident is questionable. In this regard, Dr. Palotta did not question her in the hypnotic state as to what independent information she had acquired about the accident. Further, during her recollection of the events under hypnosis, she stated that she saw a "feed truck" coming over the hill. If the recitation of events by Susan under hypnosis had been a spontaneous, uncontaminated recollection, there would have been no way for her to know this was, in fact, a feed truck, as it was clearly established that from the front the truck had no such distinguishing features. Such an identification would have had to be based on supposition or speculation. Also, while Susan claims to have talked to no one about how the accident happened, it should be noted that her recalled memory under hypnosis conforms to the petition filed in her behalf several months before she claims to have had any recollection.
Opposing parties objected strenuously to Dr. Palotta's testimony. Dr. Palotta testified as to the manner in which the treatment was accomplished and as to the scientific validity of such procedures. As a qualified expert, such testimony is admissible. However, Dr. Palotta's recitation of events recalled by Susan under hypnosis and offered by her to corroborate her testimony is hearsay and is inadmissible. We are unaware of any exception to the hearsay rule under which such testimony would be admissible.
Joyce Allen was a passenger in the Morrison vehicle on the right side of the back seat. She testified that she saw the Watson truck come over the hill about 350 feet away and that he was one and a half to two feet across the center line. Upon cross-examination, she was not clear whether she, in fact, saw the wheels in relation to the center line and pointed out herself that there was water on the road and the accident *593 happened in a matter of a few seconds. She also testified that the truck never got back in the proper lane and the collision occurred in Morrison's lane (southbound). This response is directly contradicted by the weight of the evidence, both physical and testimonial.
The testimony of both Susan and Joyce is called into question as to whether they saw the Watson truck's wheels cross the center line. Dr. Olin K. Dart, a civil engineer and certified surveyor, testified at trial and in deposition that the point of impact, based on gouge marks in the highway, was past the crest of the hill going from north to south. In other terms, the truck never actually rounded the crest. Therefore, the line of sight made it impossible for the girls in the Morrison vehicle to ever really see the center line next to the wheels of the vehicle, because they would only be able to see the center line to the crest of the hill.
Sharon Allen, who was occupying the front seat of the Morrison vehicle, only testified that Susan was driving about forty to forty-five miles per hour and that after they went around the curve, she jerked the wheel to the right, hit a drop-off and went back into the road. Sharon did not see the Watson truck and did not know where the accident occurred.
Sylvester Watson had been driving trucks since 1946. He testified that he was driving in a northerly direction on Louisiana Highway 1054 at thirty to forty miles per hour when he came upon a car ahead of him turning right into a gravel road at the foot of the hill where the accident occurred. After the car turned off, he claimed that he put the truck into second gear to gain momentum to go up the incline. The physical evidence at the scene substantiates this claim, as his truck was locked in second gear following the accident and the maximum speed of the truck in second gear would be approximately twenty-five miles per hour. Watson insisted that he never left his lane of traffic. Instead, he claimed that the Morrison vehicle veered off the western side of the road (southbound lane), then lost control and came back across the highway, colliding with his truck in its lane.
Watson's testimony as to the point of collision being approximately five feet in the northbound lane is substantiated by the physical evidence at the scene and the conclusions drawn from this evidence by the state trooper who responded to the accident call and by Dr. Dart.
The burden of proving that Watson negligently came over the center line rests upon those seeking to recover based on his negligence, namely Sharon and Joyce Allen and Susan Morrison. No physical facts or impartial witnesses were offered to substantiate their claims. Even the testimony of the parties offered to prove this claim is questionable. Susan Morrison had no recollection of the accident for approximately a year and four months from its occurrence and only recalled the events under hypnosis. Joyce Allen's testimony was not entirely accurate in that she claimed to be able to see the center line where the truck's wheels crossed it, although a survey of the scene shows this was a physical impossibility. Further, Joyce claimed that Watson's truck never returned to its proper lane and the accident occurred in the south-bound lane, although the physical evidence directly contradicts this possibility. On the other hand, Watson claimed never to have left his lane of traffic, and the physical evidence establishes that the collision occurred in his own lane. Therefore, Watson's negligence was not established by a preponderance of the evidence as is the burden. The contrary result reached by the trial court is manifestly erroneous.
Having determined that the burden of proof of Watson's negligence was never carried by the proper parties, it is next necessary to review the finding of the trial court that the Department of Highways "was guilty of negligence in that it allowed an admittedly dangerous road condition to remain for at least 6 months after it knew or should have known of the existence of said condition."
The basis of the contention that the Department of Highways is liable is the existence *594 of the so-called "rut" or "drop-off" at the edge of the highway. The existence at the time of the accident of this five-inch deep, six to eight inch wide rut directly next to the western edge of the paved surface is firmly established by the evidence. Furthermore, Charles F. Lee, educational director for Amite Academy, testified that six months prior to the accident he ran off the road surface into the identical rut while meeting a car on Louisiana 1054 and almost lost control of his vehicle. Lee testified that prior to the accident he advised two different Highway Department working crews of the existence of the rut. When nothing was done to remedy the situation, he testified that he called the District Office of the Department of Highways in Hammond to get the rut fixed. That the rut was the same one that Susan Morrison encountered is substantiated by Lee's testimony that he visited the scene the next day, identified it from the accident photographs and was well acquainted with the road as he traveled it at least once or twice a day.
M. K. Johnson was employed by the Department of Highways as an assistant engineer in charge of maintenance. Louisiana Highway 1054 was within his jurisdiction. He testified in his deposition that it is normally assumed that the shoulders should tie into the road surface approximately an inch below the existing surface. He also testified that erosion in the shoulder which would be detrimental to the traveling public is normally attempted to be corrected as soon as detected. He further stated that a rutted place approximately five inches deep is such a defect as should be repaired.
The duty of the Department of Highways to maintain the public highways is founded in statute and recognized in our jurisprudence. La.R.S. 48:21; Hopkins v. State, 167 So.2d 441 (La.App. 1st Cir. 1964), and cases cited therein.
Maintenance is defined by La.R.S. 48:1(13) as follows:
"`Maintenance' is the operation, activity, and continuing process of repairing and preserving an existing highway or any part thereof to keep it at or near its original level or standard of usefulness."
Highway is defined by La.R.S. 48:1(11) as follows:
"`Highway' means a public way for vehicular, mounted, and pedestrian traffic, including the entire area dedicated thereto and the bridges, culverts, structures, appurtenances, and features necessary to or associated with its purposes."
It is well recognized that the "shoulders" of highways are included within the duty. Hopkins v. State, supra; Willis v. State ex rel. La. Department of Highways, 321 So.2d 819 (La.App. 1st Cir. 1975).
However, the duty to repair and maintain the highways does not extend to every possible risk encountered on the highways by the traveling public. As stated in Doucet v. State, Department of Highways, 309 So.2d 382 (La.App. 3rd Cir. 1975):
"* * * The duty of the Department
of Highways is only to see that state highways are reasonably safe for persons exercising ordinary care and reasonable prudence. It is liable for damages only when the evidence shows (1) that the hazardous condition complained of was patently or obviously dangerous to a reasonably careful and ordinarily prudent driver, and (2) that the department had notice, either actual or constructive, of the existence of the defect and failed within a reasonable time to correct it. [Citations omitted]" (309 So.2d at 385)
In the instant case, the defect in the highway was clearly of the nature warranting repair. In his deposition the Department of Highway's supervisor, M. K. Johnson, recognized the duty of the Department to correct defects hazardous to the driving public. Moreover, he recognized that this particular defect was one which warranted repair. Furthermore, the testimony of Charles Lee established that the Department of Highways had actual knowledge of this particular defect several months prior to the accident and failed to repair it.
We conclude that the trial court was entirely correct in finding the Department of *595 Highways causatively negligent. It is next necessary to determine whether Susan Morrison exercised the reasonable care of a prudent driver or whether she was guilty of contributory negligence barring her recovery. Whether Susan Morrison is barred from recovering against the Department of Highways depends upon whether her conduct in driving her vehicle to the right and in leaving the paved surface was reasonable under the circumstances.
While it was not established by a preponderance of the evidence that Watson, in fact, drove into Susan Morrison's lane, it was established that as Watson's vehicle became visible to Susan Morrison over the crest of the hill it appeared to her to encroach into her lane creating an apparent danger. The road in question is narrow, being only twenty feet wide in the general vicinity and at the point of collision. Furthermore, it is curving and hilly and at the time of the accident was wet. Photographs offered at trial clearly indicate that the view in the southbound lane over the hill can be misleading as to the positioning of approaching vehicles. This situation of an apparent emergency was strongly corroborated by the expert analysis of Dr. Dart, as evidenced by a stipulation entered into by all parties. Aggravating the situation is the fact that the truck was fairly wide when compared to the narrowness of the road. Also, it was necessary for Susan to exercise her judgment in a matter of a very few seconds as the vehicles approached each other at a closing speed of approximately 100 feet per second from the point of first perception testified by Susan to be 500 feet and by Joyce Allen to be 350 feet. Given such circumstances, it was not unreasonable for Susan Morrison to move abruptly to the right of her lane in response to the apparent problem encountered in approaching the wide truck on the narrow, hilly, rain-soaked road. Her speed of forty to forty-five miles per hour was not excessive for such a maneuver. We conclude that the actions of Susan Morrison, within the aforesaid factual context, were those of a reasonably careful and prudent driver.

ISSUES OF DAMAGES
In Suit No. 10,906 J. L. Morrison prayed for special damages of $1,925.00 in property damages, $3,000.00 in medical expenses, $20,000.00 in future medical costs. On behalf of his daughter he prayed for general damages for pain, suffering, and disfigurement in the amount of $50,000.00 Subsequently, Susan Morrison was substituted as party plaintiff. The trial court awarded J. L. Morrison $1,925.00 for property damage to his automobile and $8,082.35 for medical expenses as stipulated. Susan Morrison was awarded $75,000.00. Her extensive injuries were detailed by the trial court and have raised no contention that they do not fully support an award of $50,000.00. Defendant-appellant, Department of Highways, argues, however, that the trial court erred in awarding general damages over and above the amount requested in the plaintiff's petition. We agree.
Susan Morrison's contention in support of the award is that La.C.C.P. art. 1841 authorizes the trial court to award any amount that may be justified. C.C.P. art. 1841 provides, in part:
"A judgment * * * may award any relief to which the parties are entitled. * * *"
However, this provision is essentially the same as C.C.P. art. 862. As reporter's comment (b) to that article explains, the intendment of these provisions was to suppress the unduly technical "theory of the case" doctrine. La.C.C.P. arts. 1841 and 862 were not intended to allow the trial court to award general damages in excess of the prayer.
The general rule is that a litigant may not recover an amount greater than that for which he prayed in his petition. Alumaglass Corporation v. Administratrix of Succession of Kendrick, 303 So.2d 911 (La.App. 1st Cir. 1974), and cases cited therein.
The only exception to this rule of which we are cognizant involves elements of special damages in situations when otherwise *596 inadmissible evidence is admitted without objection and the pleadings are enlarged to this extent. La.C.C.P. art. 1154; Sterkx v. Gravity Drainage District No. 1 of Rapides Parish, 214 So.2d 552 (La.App. 3rd Cir. 1968).
Appellees, Acey Allen and Sharon Allen, in answer to the appeal contend that the awards of $20,000.00 for Joyce Allen and $50,900.00 for Sharon Allen are inadequate. The trial court in written reasons accurately characterized and itemized the injuries received by both Sharon Allen and Joyce Allen; therefore, we will not reiterate. Suffice it to say, we find no abuse of discretion by the trial court in making these awards.
We now address the individual judgments rendered by the trial court as they relate to our foregoing reasons.
The judgment of the trial court in Suit No. 10,904 is affirmed. Although this Court has determined that Watson was not negligent and, therefore, not barred from recovery by his own negligence, the negligence of his defendant Susan Morrison has not been proved and Watson failed to sue the Department of Highways either by original or amending petition.
The judgment of the trial court in Suit No. 10,905 insofar as it pertains to the liability of Watson, Amite Milling Company, Inc., and Continental Casualty Company is reversed; in all other aspects the judgment is affirmed.
The judgment of the trial court in Suit No. 10,906 insofar as it pertains to the liability of Watson, Amite Milling Company, Inc., and Continental Casualty is reversed. The judgment in No. 10,906 is amended by reducing the award of damages to Susan Morrison to $50,000.00, and in all other aspects, as amended, it is affirmed.
The costs of these consolidated appeals, insofar as permitted by law, are assessed to the Louisiana Department of Highways.
AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.
EDWARDS, J., concurs, but dissents only from the holding as a matter of law that a trial judge cannot award general damages, in excess of the prayer, although factually supported by the evidence in the record. C.C.P. 862.