433 So.2d 1100 (1983)
Edmund J. NOLAN, Jr. and Sally Ward
v.
Thomas OCHELLO, Jr. and Allstate Insurance Company.
No. 82 CA 0840.
Court of Appeal of Louisiana, First Circuit.
May 17, 1983.
Rehearing Denied July 11, 1983.
*1101 Felix Octave Pavy, Opelausas, for plaintiffs, appellees.
France W. Watts, III, Franklinton, Kerry P. Camarata, Matairie, for defendants, appellants.
Before EDWARDS, WATKINS and SHORTESS, JJ.
SHORTESS, Judge.
Edmund J. Nolan, Jr. (plaintiff) and Sally Ward[1] filed suit against Thomas Ochello, Jr., and Allstate Insurance Company (defendants) for damages allegedly sustained as a result of an automobile accident which occurred on October 24, 1979. At the time of the accident, plaintiff was driving a vehicle owned by Sally Ward and was stopped in a line of cars which were waiting at a drawbridge. While at this standstill, plaintiff's vehicle was rear-ended by an automobile driven by Virginia McClellan, which had been struck from the rear by Ochello's vehicle. Trial by jury was held, and a verdict was returned for plaintiff and against defendants for $10,000.00. In answers to special interrogatories, the jury responded in pertinent part:

 "5. In terms of money, what amount of
 damages do you find that plaintiffs
 sustained as a result of the automobile
 collision in question?
 EDMUND J. NOLAN, JR.
 A. Special Damages:
 (1) Past and future medical expenses $5,000.00
 _________
 (2) Past and future lost wages -0-
 _________
 B. General Damages:
 (1) Past and future physical pain,
 suffering and discomfort $ 1,000.00
 __________
 (2) Past and future mental anguish,
 embarrassment and humiliation -0-
 ___________
 (3) Permanent disability $ 4,000.00"
 ___________

The trial judge entered judgment on the jury verdict. Thereafter, a motion for new trial, or in the alternative, an additur, was timely filed, but was denied. From this judgment, plaintiff perfected this devolutive appeal.[2]
*1102 The sole issue in this appeal is quantum. Plaintiff argues that the jury abused its discretion in awarding a woefully inadequate sum to compensate plaintiff for his injuries. He further maintains that the trial judge abused his discretion in not granting the motion for new trial, or alternatively, an additur.
Plaintiff contends that the jury erred as follows:
(1) in rendering a grossly inadequate award of $5,000.00 in general damages for a disc injury, resulting in 5% permanent disability to plaintiff's body as a whole; and
(2) in failing to award plaintiff damages for past and future lost wages and loss of earning capacity.
The trier of fact is awarded broad discretion in making an award of general damages. La.C.C. art. 1934, subd. 3. Only when the record reveals a clear abuse of this discretion, is an appellate court justified in disturbing a trial court's award of damages. Perniciaro v. Brinch, 384 So.2d 392 (La.1980); and Reck v. Stevens, 373 So.2d 498 (La.1979). The jury awarded plaintiff $4,000.00 for permanent disability and $1,000.00 for past and future pain, suffering and discomfort, totaling $5,000.00 in general damages. It also awarded $5,000.00 for past and future medical expenses.
Plaintiff testified that when his vehicle was struck from the rear, the collision forced his automobile into the car in front of him; that when the collision occurred, his body was thrown backward, and the force broke the front car seat; and that he was then thrown forward into the steering wheel and struck the wheel with his upper chest. Immediately after the accident, plaintiff went to the emergency room at Slidell Memorial Hospital complaining of pain in his upper chest, neck, left shoulder, lower back, and a cutting sensation across his right toe. He also stated that he had a tingling sensation and pulsing in his right foot. At the hospital, x-rays were taken, which were negative for fractures. Plaintiff was offered pain medication at that time; however he stated that he did not want to take the medication until he saw a specialist and was certain of its effects. Plaintiff made the earliest possible appointment at the New Orleans East Orthopaedic Clinic[3] with Dr. John McLachlan, a specialist in orthopedic surgery, where he was first seen on November 5, 1979. Plaintiff was still under treatment by Dr. McLachlan at the time of trial.
Plaintiff is 6 feet, 6 inches tall, and he weighed approximately 240 pounds at the time of trial and at the time of the accident. He is employed as an engineer for Martin Marietta Corporation at the Michoud Assembly Facility in New Orleans, where he does analysis engineering. He is in a management position, supervising five employees; this is an office desk job and requires a considerable amount of sitting during the day. Plaintiff testified that his pain was "pretty intense" during the first few days after the accident, particularly in his lower back; but that his neck, left shoulder, and upper body pain went away in two weeks. However, the pain in his lower back and right leg has never disappeared, and due to this pain, he has been forced to change his entire lifestyle. As examples of his change in lifestyle, plaintiff testified as follows: (1) before the accident, he slept six to seven hours a night and now must sleep eight to ten hours or else he has additional pain the next day; (2) he must rest an hour to an hour and a half each day when he returns home from work; (3) he played college basketball and enjoyed sports, but can no longer participate in sports; (4) he no longer enjoys spectator sports because he cannot stay long in a sitting position; (5) he must limit activities which involve bending over and as a result has had to curtail his working on cars, an activity he used to enjoy; (6) he can no longer work the overtime hours *1103 at his job as he formerly did; (7) his pain gives him problems daily at work, as he is limited to the length of time he can sit at his desk; (8) he must restrict his driving, as lengthy trips will aggravate his back pain; (9) he can no longer take vacations in the manner he once did, as he must restrict vacations to bus tours so that he can move around when necessary.
Dr. McLachlan stated that he first saw plaintiff on November 5 and 8, 1979. McLachlan's initial diagnosis was that plaintiff was suffering from an acute cervical and lumbar sprain, with lumbar symptoms aggravated by his large frame, and some degenerative changes present in the lumbar spine. He also found evidence of degenerative changes in the cervical spine, with the cervical sprain being superimposed on these cervical changes. McLachlan instructed plaintiff to rest in bed, utilize heat, and avoid all activities requiring bending, lifting, stooping, straining, or any other activities which might aggravate his condition such as driving. He gave plaintiff prescriptions for Valium and Phenaphen # 3.
McLachlan further testified that plaintiff was again seen on November 15, when his "tingling-like" sensation in his right toe seemed suggestive of nerve-type problems, but that on November 23, he felt that plaintiff had improved enough that he could return to work. Plaintiff again saw McLachlan on February 13, 1980, after taking a vacation, and reported that he had a good deal of difficulty with his symptoms, which had interfered with his trip. McLachlan testified that at this time, he noted plaintiff's symptoms were persistent; that he began to suspect disc problems; and that he suggested to plaintiff that he utilize a back support and continue to limit his activities. On March 6, 1980, plaintiff again saw McLachlan and reported that during the interim he had undergone hernia surgery, which had caused him difficulties in using the back support. Plaintiff's pain in the lumbar area persisted and was aggravated by bending and long standing. The tingling sensation in his right foot also persisted. On this date, there was limited motion of the lower spine, which he classified as mild. McLachlan continued to suspect disc problems, but felt that conservative treatment should be maintained as long as the pain was tolerable, with a restriction of activities. At this point, the doctor brought up the possibility of a myelogram and surgery; however, he expressed his reservation about recommending this procedure, unless it was absolutely necessary for the patient to undergo. It was decided that conservative treatment should be continued. Plaintiff was again seen on March 27 and May 13, 1980. The doctor felt that it was significant that plaintiff was still having slightly limited motion in the spine, and that an incidence of long driving on the causeway near New Orleans had aggravated plaintiff's right leg symptoms. Plaintiff returned to McLachlan on September 4, 1980, January 22, 1981, September 30, 1981, and March 11, 1982. All during this time, plaintiff's symptoms and problems persisted.
In a medical report submitted by McLachlan after the January 22, 1981, visit, the following summary of plaintiff's condition was given:
"In summary, Mr. Nolan as a result of his vehicular accident sustained an injury to his lumbar spine which has resulted in persistent lumbar symptoms suggestive of mild disc disease. Thus far there has been no definite indication for myelography or surgery. He has altered his life style and is able to cope with the problem at this present time. It is possible that in the future myelography and possibly surgery would be indicated should his symptoms become worse. It basically was felt that the injury was superimposed on already existing degenerative changes. I am unable to predict how long he will remain symptomatic but feel that has (sic) time progresses it will be difficult to distinguish degenerative symptoms from those secondary to his vehicular accident. I would estimate a permanent physical impairment of 5% whole body as a result of his injury and persistent symptoms."
Additionally, the doctor testified that he felt that the injuries plaintiff sustained in *1104 the accident aggravated an existing degenerative problem. He felt that there was some change in the lumbar disc spaces resulting in some pressure or compromise of the nerves to the extent that plaintiff experiences persistent symptoms. The accident made the degenerative conditions symptomatic. McLachlan felt that plaintiff would continue to have to restrict his activities; that plaintiff was probably more susceptible now to further injury; and finally, that plaintiff would have to continue to return for medical visits, approximately every three months, for an indefinite period, and may have to consider a myelogram and possible surgery.
Defendants argue that the award should be upheld, in that plaintiff's case lacks objective findings on which to base his complaints and injuries. However, McLachlan testified that he utilized x-rays, his examinations, and plaintiff's subjective complaints, in order to compile a complete picture for his diagnosis and prognosis. He also stated that plaintiff had no prior history of back problems, and that he felt that plaintiff's problems were related to the October 24, 1979, accident. Defendants called no rebuttal expert to refute this point. Plaintiff's complaints and problems are commonly related to accidents which cause damage to the back and neck area. His injuries were diagnosed by a specialist in orthopedics, who corroborated plaintiff's complaints. A tort-feasor must take his victim as he finds him, and is, thus, responsible for the consequences of his tort, although the damages caused thereby are greater because of a prior condition of the victim, which is aggravated by the tort. Reck v. Stevens, supra. Our review of the record convinces us that the jury was manifestly erroneous and abused its "much discretion" in awarding plaintiff only $1,000.00 in general damages, for past and future suffering and for mental anguish. Such a sum is woefully inadequate to compensate plaintiff for his injuries proved herein by competent evidence. We find that an award is justified in this case of $20,000 in general damages. In making this revision, we have disturbed the award only to the point of raising it to the minimum sum which was reasonably within the jury's discretion. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976.).
Plaintiff also urges that the jury erred in not awarding any sum whatsoever for past and future lost wages and for loss of earning capacity. A claim for loss of earnings need not be proved with mathematical certainty, but only by such proof necessary to reasonably establish the claim. Jordan v. Travelers Insurance Company, 257 La. 995, 245 So.2d 151 (1971). Such proof may only consist of the plaintiff's testimony, if considered truthful, but the better practice is to introduce corroborating testimony. Jordan v. Travelers Insurance Company, supra. Plaintiff's testimony that he missed nine working days immediately following the accident due to the injuries and pain, was uncontradicted. Additionally, Dr. McLachlan testified that it was not until the office visit of November 23, 1979, nearly 25 days after the accident, that he felt that plaintiff had improved enough to return to work. We find that the jury was manifestly erroneous in failing to award plaintiff his lost wages for this nine-day absence. At the time of the accident, plaintiff was earning $13.94 per hour. His normal work day was eight hours, and thus, his lost wages for the nine-day period totaled $1,003.68. Accordingly, we also amend the jury award to include an award of $1,003.68 for past lost wages.
Although plaintiff also testified concerning a loss in the number of overtime hours he was capable of working due to his pain and injuries, we find these losses speculative, and certainly within the "much discretion" allowed the trier of fact in awarding damages. Reck v. Stevens, supra. We also find that the failure of the jury to award damages for loss of earning capacity was within its "much discretion."
Accordingly, for all the foregoing reasons, we affirm the jury verdict, but amend in part to award plaintiff $20,000.00 in general damages and an additional $1,003.68 in past lost wages, which, together with the *1105 $5,000.00 awarded for past and future medical expenses, totals $26,003.68. All costs of this appeal are assessed to defendants.
AFFIRMED, AS AMENDED.
NOTES
[1] Sally Ward was awarded $600.00 for the property damages to her automobile and $1,200.00 for the inconvenience caused by the loss of said vehicle, totaling $1,800.00. By stipulation between counsel in this court, this amount was reduced to $600.00. She is no longer a party to this appeal.
[2] Defendants also filed an independent appeal. However, after the stipulation, all other issues but the sufficiency of quantum were rendered moot.
[3] Plaintiff stated that he chose this clinic and Dr. McLachlan for treatment because of the convenient location of the facility to his residence.