489 So.2d 1293 (1986)
Lillie Mae TROSCLAIR, et al.
v.
The TERREBONNE PARISH SCHOOL BOARD, Betty B. Cavalier, and Liberty Mutual Insurance Company.
No. 84-CA-0364.
Court of Appeal of Louisiana, First Circuit.
May 28, 1986.
Rehearing Denied July 15, 1986.
Writs Denied September 19, 1986.
*1294 Louis J. St. Martin, St. Martin & St. Martin, Houma, for plaintiffs and appellees Lillie Mae Trosclair et al.
John L. Lanier, Thibodaux, for defendants and appellants Betty B. Cavalier, Terrebonne Parish School Board & Liberty Mut. Ins. Co.
Huntington B. Downer, Jr., Waitz, Downer & Best, Houma, for intervenor, Terrebonne Parish Police Jury.
Before GROVER L. COVINGTON, C.J., and LOTTINGER, EDWARDS, COLE, WATKINS, SHORTESS, CARTER, SAVOIE, CRAIN, ALFORD and JOHN S. COVINGTON, JJ[*].
EDWARDS, Judge.
The plaintiffs in this survival and wrongful death action are Lillie Mae Trosclair, suing individually and as administratrix of the Estate of her deceased husband, Arthur P. Trosclair, and Aubrey P. Trosclair, Peter J. Trosclair, Tammy Trosclair Theriot and Rita A. Trosclair, her four children. The defendants are Betty B. Cavalier, the Terrebonne Parish School Board, and Liberty Mutual Insurance Company. The Terrebonne Parish Police Jury, Mr. Trosclair's employer, intervened to receive medical expenses and worker's compensation benefits paid to Mr. Trosclair. The trial court rendered a judgment (1) awarding the plaintiffs $720,645.00 in survival and wrongful death damages and (2) awarding intervenor $138,144.12 in medical expenses paid. The defendants have taken a suspensive appeal.
The accident which led to Mr. Trosclair's death occurred on May 20, 1981, at approximately 9:50 a.m. Trosclair, an employee of the Terrebonne Parish Police Jury, was on a tractor grading shells on the shoulder of Terrebonne Parish Road 15, a two-lane blacktop, about 3½ miles west of the intersection with Savanne Road in Houma, Louisiana. As determined at trial his procedure in spreading the shells was to finish a stretch of shoulder on one side, turn around in the middle of the road, cross over, and grade the other side. Several *1295 white semi-circles of shell dust could be seen on the blacktop after the accident, which indicated he had already made several such U-turns that morning. It is clear from testimony that there were no flagmen or signs posted warning motorists of the road work. At the time of the accident, Trosclair was headed west, partially blocking the right-hand lane of travel.
Betty Cavalier, a school bus driver for the Terrebonne Parish School Board, had just finished her run and was on her way home. She testified that she first saw the tractor as she approached from the west, when she crossed a small bridge about 430 feet behind Mr. Trosclair. She was driving within the posted speed limit of 45 m.p.h. Without reducing her speed, she pulled into the left lane to pass. She testified that when she was about 25 feet away, the tractor made a sudden turn left in front of her. (Skid marks measured after the accident indicated she was actually between 104 feet and 112 feet away when she first began braking.) She slammed on her brakes, but was unable to stop to avoid the collision.
Mrs. Cavalier was uninjured, but Mr. Trosclair sustained a severe fracture and laceration of his left tibia. First treated at Terrebonne General Hospital, he was later transferred to Southern Baptist Hospital in New Orleans for treatment of a pre-existing chronic osteomyelitis aggravated by the accident. Complications set in immediately, requiring extended hospitalization and five surgical procedures performed on the leg before it was finally amputated. He died on August 4, 1981, within hours of the amputation.
The trial judge found that Betty Cavalier was negligent in failing to reduce her speed after she saw the tractor in the roadway, and that her negligence was the "sole and proximate cause of the injury and subsequent death of the plaintiff."
Accordingly, on the survival claim of Mr. Trosclair, he awarded $410,645, itemized as follows:

Past lost wages $ 17,906.00
Future lost wages $ 83,739.00
Conscious Pain & Suffering $309,000.00

On the wrongful death claim, he awarded $100,000 to Mrs. Trosclair; $60,000 to Rita, then a minor; and $50,000 each to Aubrey, Peter and Tammy.
On the intervention claim, the trial judge awarded the Terrebonne Parish Police Jury $138,144.12 for the medical expenses the Police Jury paid for Mr. Trosclair. The trial judge also awarded the Police Jury $12,998.04 in reimbursement for compensation benefits paid to Mrs. Trosclair after her husband's death.
The defendants raise four issues on appeal:
(1) The trial court erred in failing to apply comparative negligence.
(2) The trial court erred in failing to assign fault to the Police Jury.
(3) The trial court erred in finding that Mr. Trosclair's death was caused by the accident.
(4) The trial court erred in granting a general damage award for the decedent's pain and suffering in an amount greater than that prayed for in the petition.
LIABILITY OF ARTHUR J. TROSCLAIR:
In their first assignment of error, defendants contend that the trial judge erred as a matter of law in failing to apply comparative negligence under LSA-C.C. art. 2323. In support, they argue first that the issue "involves a question of sufficiency of evidence," which is not subject to the manifest error standard of Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). Second, they argue that application of comparative negligence is a question of law, not of fact, under Dulaney v. Travelers Insurance Co., 434 So.2d 578 (La.App. 1st Cir. 1983) and Varnado v. Continental Insurance Co., 446 So.2d 1343 (La.App. 1st Cir. 1984). But their arguments are essentially unrelated to each other and generally unsupportive of their position.
Dulaney, Varnado, and the more recent Efferson v. State, Through Dept. of *1296 Transp. & Dev., 463 So.2d 1342, 1351 (La. App. 1st Cir.1984), writs denied, 465 So.2d 722 (La.1985), all essentially adopting Professor Johnson's analysis in his article, Comparative Negligence and the Duty/Risk Analysis, 40 La. L.Rev. 319 (1980), hold that the application of comparative negligence is a question of law when the issue is whether the scope of the defendant's duty includes protecting the plaintiff from his own negligence.
In this case, the trial judge did not hold that the scope of the defendant's duty to reduce her speed or otherwise attempt a safe pass on the left included protecting the decedent against his own negligent left turn. He found, rather, that the defendant's negligence was the "sole and proximate cause" of the accident, injury, and subsequent death. He therefore did not commit legal error in failing to apportion fault under article 2323.
His error, if it be such, was a factual one in failing to find the decedent contributorily negligent, or, conversely, in finding the defendant solely at fault. As an issue of fact, that finding can be reversed only if it is clearly wrong. See Watson v. State Farm Fire and Casualty Insurance Co., 469 So.2d 967 (La.1985). On the issue of fact, our review is subject to the manifest error standard of Arceneaux. We think this is true whether or not the finding is based on insufficient evidence, since we cannot think of a situation where a finding based on insufficient evidence is not also clearly wrong.
In this case, however, the evidence clearly establishes that Mr. Trosclair was negligent by making a left turn in front of the bus approaching from the rear without first ascertaining that it was safe to do so.
In addition to Mrs. Cavalier's testimony, the testimony of plaintiffs' own witnesses established Mr. Trosclair's negligence.
Robert Gauner, an eye witness, testified that he was standing in his driveway about thirty to fifty yards away, watching the tractor grade the shells. He saw two other crewmen in an adjacent driveway shoveling shells, but saw no flagmen on duty. He testified that he saw the bus pull into the left lane to pass, saw the tractor, which was partially blocking the right-hand lane, turn left in front of the bus, and saw the bus slam into the rear of the tractor after skidding "a pretty good distance."
Robert Gauner's testimony was corroborated by that of his father, H.L. Gauner, except that H.L. Gauner testified that the tractor had already begun its turn into the road when the bus crossed the bridge: "The bus undoubtedly was approaching the bridge. I didn't see the bus until the bus got on the bridge and she saw that tractor and she started trying to get control. I would say when he started his turn the bus hadn't quite got to the bridge." The plaintiffs contend that this testimony supports the trial court's finding that Mrs. Cavalier was solely at fault. We disagree.
Even assuming this testimony to be true, it does not absolve the decedent of all liability. The duty of a motorist to maneuver a left turn in safety is heavy and statutorily imposed. See LSA-R.S. 32:104. This court said, in Booth v. Aetna Casualty & Surety Co., 220 So.2d 188, 192 (La.App. 1st Cir. 1969), that "left-turns or U-turns ... are the most dangerous maneuvers in which a motorist can indulge and ... he must make sure that such a maneuver can be accomplished without danger to traffic to his left or rear." In Makas v. NOPSI, 410 So.2d 351, 353 (La.App. 4th Cir.1982), the fourth circuit stated, "the driver ... carries the burden of exculpating himself of fault should an accident occur."
The decedent was clearly negligent in turning left and blocking the road with a slow-moving tractor, thereby creating a perilous situation laden with the risk of collision. We find that the trial court was clearly wrong in failing to assign any fault to the actions of Mr. Trosclair.
The Louisiana Supreme Court recently listed the following factors which should be considered by a court in determining the degree of fault assigned to each negligent party under article 2323:
(1) the level of each actor's awareness of the danger;

*1297 (2) the magnitude of the risk created by the conduct;
(3) the significance of what was sought by the conduct;
(4) the relative capacity of the actors;
(5) the presence of extenuating circumstances which might justify hasty action.
Watson v. State Farm, supra, at 974.
Under (1) it appears that Mrs. Cavalier had a clearer view of the danger of collision, since she saw the decedent first. The remaining factors appear to be evenly balanced between the defendant and the decedent. The magnitude of the risk of collision was equally great for both. Passing the decedent was no more significant than crossing to the other side of the road. Neither party seemed more or less capable of acting reasonably or safely under the circumstances than the other, and there were no circumstances present to justify hasty action by either party.
In Efferson, moreover, by analogy to Reck v. Stevens, 373 So.2d 498 (La.1979), this court held that an appellate court should raise or lower percentages of fault to the lowest or highest degree of fault that a reasonable trier of fact could have found.
Under the circumstances, the lowest degree of fault a reasonable trier of fact could assign to Mr. Trosclair, in light of the factors articulated in Watson, is 40% (forty percent).
LIABILITY OF TERREBONNE PARISH POLICE JURY
In their second assignment of error, the defendants contend that the trial judge erred in failing to find any negligence on the part of the Terrebonne Parish Police Jury. They argue that the Police Jury's failure to post flagmen or warning signs of any kind was negligent and contributed to the accident.
There is no doubt from the record that no warning signs were posted and while two other police jury employees were in the general area shoveling shells they were not flagging traffic. The only explanation for the absence of flagmen was that given by Col. Joseph Andre, plaintiffs' expert in safety and accident reconstruction. He testified that it was unfeasible economically to pay a flagman for every tractor moving up and down a road or highway. In his words, "it's just too expensive." He further testified that he doubted whether warning signs would be very effective in slowing down the public.
In the recent case of Files v. State, DOTD, 484 So.2d 746 (La.App. 1st Cir. 1986), this court held the Department of Transportation and Development twenty percent (20%) at fault for failing to post flagmen to warn approaching motorists of a street sweeper operating in the vicinity of a sharp curve or hill.
In this case, we see no reason, economic or otherwise, why the two other employees could not have doubled or alternated as flagmen, or why the police jury could not have instructed them to post markers or signs on the roadway advising approaching motorists to slow down. This failure constituted negligence and contributed to the accident.
In light of the negligence of the other parties, and in consideration of the factors listed in Watson, we assign fault to the Police Jury at 10% (ten percent).
MR. TROSCLAIR'S CAUSE OF DEATH
In their third assignment of error, the defendants contend that the plaintiffs failed to establish with sufficient legal certainty what the precise cause of death was and failed to present specific medical evidence connecting the death to the traumatic injury.
While it is true that neither Mr. Trosclair's treating physician, Dr. Crois, nor the pathologist who performed the autopsy could pinpoint the exact cause of death, listing instead numerous findings, any one of which could have caused Mr. Trosclair's death, we find this to be of little moment. Mr. Trosclair suffered from a pre-existing chronic osteomyelitis, which was aggravated by the accident, and developed a massive infection in his leg wound which required reconstructive surgery and eventually led to the amputation of his leg. Of *1298 this condition, Dr. Crois testified in deposition that it was his "opinion that he died as a result of complications from the initial trauma of the accident ... where his osteomyelitis was exposed."
A tort-feasor takes his victim as he finds him and is responsible for whatever damages are aggravated by the victim's pre-existing condition. See Nolan v. Ochello, 433 So.2d 1100 (La.App. 1st Cir.1983), writs denied, 441 So.2d 210, 211 (La.1983). We find that the death was caused by the damages sustained in the accident.
DAMAGES IN EXCESS OF PRAYER
In their final assignment of error, the defendants contend that the trial court erred in awarding general damages in excess of the amount prayed for in the petition.
The trial court granted $309,000 for pain and suffering experienced by the decedent before his death. However, in the petition his wife itemized past pain and suffering prior to death in the amount of $250,000. The defendants contend that the award is excessive under Watson v. Morrison, 340 So.2d 588 (La.App. 1st Cir.1976).
Watson held that LSA-C.C.P. arts. 862 and 1841 do not give a trial court the authority to award general damages in excess of the amount prayed for.
Although the second and fourth circuits have declined to follow Watson,[1] and while this author disagrees with Watson's holding,[2] a majority of this court does not believe that a decision to overrule Watson need be made in this case. Even though the damages for pain and suffering as itemized in the petition total only $250,000, less than the amount awarded, the total unitemized demand in the prayer is for $2,000,000. The amount awarded does not exceed the total amount prayed for, and for that reason is affirmed.
DECREE
For the foregoing reasons, the finding that defendant, Betty Cavalier, was solely at fault is reversed. We apportion fault as follows: To the decedent we assign 40% of the fault in this accident. To Betty Cavalier, we assign 50% of the fault. To the Terrebonne Parish Police Jury, we assign 10% fault.
The damages awarded in the survival action are reduced by 40%, the percentage of fault attributed to the decedent. The damages awarded to each of the plaintiffs in the wrongful death claim are likewise reduced by 40%, the degree of fault attributed to the decedent. The defendants remain solidarily liable for 60% of the damages with full right of contribution against the Police Jury for 10%. See Watson v. Morrison, 340 So.2d 588 (La.App. 1st Cir. 1976).
The damages awarded to the Police Jury for recovery of medical expenses and death benefits paid are each reduced by 40%, the degree of fault attributed to the decedent. See Vidrine v. Michigan Millers Mutual Insurance Co., 263 La. 300, 268 So.2d 233 (1972), (which holds that an employer may recover benefits paid, even though he is concurrently negligent with third party tortfeasor); Lalande v. Index Geophysical Survey Corp., 336 So.2d 1054, 1057 (La. App. 3rd Cir.1976).
The judgment of the trial court is reversed, amended and as amended, affirmed.
REVERSED IN PART, AMENDED AND AS AMENDED, AFFIRMED.
CARTER, J., concurs, being in agreement with the result reached, but in express disagreement with any language in the opinion that expresses dissatisfaction with the rationale of Watson v. Morrison, 340 So.2d 588 (La.App. 1st Cir.1976).
COLE, J., agrees with the concurrence by CARTER, J.
NOTES
[*] Lanier, J., recused.
[1] See Wexler v. Martin, 367 So.2d 111 (La.App. 4th Cir.1979), writ denied, 369 So.2d 1352 (La. 1979), and Harrison v. State Department of Highways, 375 So.2d 169 (La.App. 2d Cir. 1979).
[2] Watson v. Morrison, 340 So.2d 588, 596 (Edwards, J., dissenting from the holding that a general damage award cannot exceed the amount of the prayer.)