299 So.2d 886 (1974)
Stanley J. BELL
v.
PRECISION MOTORS, INC., et al.
No. 5493.
Court of Appeal of Louisiana, Fourth Circuit.
July 29, 1974.
Rehearing Denied September 10, 1974.
*887 Legier, McEnerny, Waguespack, Kuhner & Scoggin (Fred Clegg Strong), New Orleans, for defendant-appellant.
Sapir, Bishop & Garcia (Joseph F. Bishop, Jr.), New Orleans, for plaintiff-appellee.
Before SAMUEL, LEMMON and GULOTTA, JJ.
LEMMON, Judge.
Commercial Credit Corporation has appealed from a judgment awarding plaintiff the amount of loss he sustained as a result of Commercial's failure to obtain collision insurance on a financed automobile. The principal issues are whether Commercial obliged itself to obtain the insurance and, if so, whether plaintiff was seasonably notified that Commercial had not procured coverage.
On June 9, 1970 plaintiff agreed to purchase a used Jaguar automobile from Precision Motors, Inc. on credit terms. In accordance with established procedure Precision made a telephone request of Commercial to finance the credit portion of the sale price. On the same day Commercial approved the loan by a telephone call to Precision.
*888 On June 10, 1970 plaintiff and Precision executed an agreement of sale and chattel mortgage. The form contract entitled "Retail Installment ContractVehicle" had been supplied to Precision by Commercial. As to required insurance, the contract contained the provision which is reproduced below:

The itemized deferred payment price included $226.00 for collision insurance.
On the same day Precision executed another portion of the printed contract, assigning the contract and note to Commercial. On June 18 Commercial issued a check to Precision for the credit portion of the sale price and the various sale expenses. Commercial, however, retained the insurance premium which was part of the total amount financed.
In processing the transaction a day or two later, Commercial's discount clerk noticed that the financed car was a high performance sports car on which Calvert Fire Insurance Company (a subsidiary of Commercial's parent company) would not issue insurance. She immediately called Precision and requested that plaintiff obtain insurance elsewhere. Commercial's clerk stated that she also tried unsuccessfully to telephone plaintiff and that her normal procedure would have been to also send a letter, but admitted her file did not contain a copy of such a letter. Commercial did not thereafter contact Precision or plaintiff again as to the insurance problem.
*889 On July 12, 1970 the Jaguar was extensively damaged in a collision. Plaintiff attempted to collect on his insurance but was informed that none had been obtained. He then instituted this suit against Precision, Commercial and Calvert.
The trial court awarded plaintiff judgment against Commercial only and dismissed the other defendants, whereupon Commercial appealed. We affirm.
The form contract supplied by Commercial required plaintiff to carry collision insurance. Commercial's manager verified the company policy that Commercial would not purchase an automobile contract from a dealer unless (1) the customer had already acquired collision insurance from his own agent, or (2) the amount of the premium was included in the contract with authority for Commercial to purchase the insurance. When so authorized by the customer, Commercial always purchased collision insurance from Calvert.
Commercial's arrangement with Calvert was that insurance coverage attached immediately if the application form was properly completed and the applicant met the guidelines contained in the form. Commercial apparently had a similar arrangement with Precision and defended this suit in part on the basis that Precision failed to use the current application form which indicated in bold print that insurance coverage was not available on the type of car in question.[1]
In order to obtain the required insurance, plaintiff executed a contract authorizing and requesting "Seller" (specified in the contract prepared by Commercial as "meaning also any assignee of Seller") to purchase the insurance, and he paid the stated amount of the premium.[2] Commercial accepted the request and authorization and the advance premium. However, when Commercial discovered the insurance problem, it made little effort to notify plaintiff it had not obtained insurance, although it should have known plaintiff was driving the vehicle secure in the belief that he had done everything necessary to place the required insurance in effect. Furthermore, Commercial made no effort to obtain insurance elsewhere and did not follow up its request that Precision do so.
Commercial was not a stranger to the contract between plaintiff and Precision. By supplying the form contract which required insurance and by setting up the financing procedures as a prerequisite to accepting the assignment, Commercial in effect required plaintiff in this case to pay the premium and to authorize the purchase of insurance. Under these circumstances Commercial became obliged to secure the insurance or to diligently attempt to notify plaintiff timely if unable to do so. Failing in this obligation, Commercial is liable for the damage thereby resulting to plaintiff, who reasonably relied on the belief that Commercial would obtain coverage.
However, Commercial contends plaintiff could not have relied on the belief that Commercial would obtain insurance, inasmuch as Precision's manager testified he told plaintiff about the insurance problem three or four days after the sale when plaintiff returned the car for minor adjustments. However, plaintiff denied this, and Commercial's discount clerk stated that the problem was not discovered until nine or ten days after the sale.
Apparently, the trial judge found plaintiff had not been notified that there was no insurance coverage. We find no manifest error in this resolution of the conflicting factual testimony.
*890 The measure of damages is the amount of plaintiff's property loss which would have been covered by insurance, had Commercial procured coverage. Counsel stipulated the property loss to be $2,985.83. The trial court awarded this sum, minus the deductible amount under the collision policy and the balance due on the discount note (after credit for two payments and for the unused premium.) While it appears that the balance due included interest unearned on the accident date, plaintiff did not seek an increase in the judgment by appeal or by answer to Commercial's appeal. For our purposes in reviewing Commercial's appeal, we conclude plaintiff is entitled at least to the amount awarded.
The judgment is affirmed.
Affirmed.
NOTES
[1] Inasmuch as plaintiff did not appeal, we do not have before us the issue of Precision's liability to plaintiff. Precision's liability, if any, to Commercial for indemnification or contribution was not raised by the pleadings and is also not before us at this time.
[2] The $226.00 figure was obtained by Precision's salesman either from a manual furnished by Commercial or from a telephone call to Commercial.