DOMENGEAUX, Judge.
Defendant-appellant, General Electric Credit Corporation, financed plaintiff-ap-pellee’s vessel which was purchased by the latter from National Boat Mart, Inc. of Lake Charles. The vessel’s hull was subsequently damaged at a time when there was no hull insurance in effect. Claiming that defendant negligently failed to obtain hull insurance as was its obligation under the finance agreement, plaintiff filed suit.
The district court held that General Electric Credit Corporation was negligent in failing to notify plaintiff of the absence of hull insurance coverage and awarded plaintiff judgment for the damages. Defendant has appealed and assigns as errors the following rulings of the district judge:
1. In concluding that defendant did not notify plaintiff of the fact that the vessel was not insured for hull damages;
2. In not allowing the office notes of Linda Standinger, an employee of defendant at its New Orleans office, to be admitted into evidence.
3. In awarding damages in excess of the amount prayed for.
In disposing of errors numbers One and Two, we adopt a portion of the district judge’s precise and thorough reasons which correctly set out the facts and applicable law as follows:
“On February 4 or 5, 1974, the plaintiff, Richard A. Foreman, purchased a 1942 Chris Craft Motor Vessel from National Boat Mart of Lake Charles, Inc., defendant. The sale was financed by a note and chattel mortgage on a form supplied by defendant, General Electric Credit Corporation. The boat appears to have been owned by an employee of National Boat Mart, but it is of no significance in this case. The plaintiff’s credit application having been previously approved by General Electric Credit Corporation, the note and chattel mortgage were assigned to the latter shortly after execution.
The chattel mortgage contains the following provision in regard to insurance:
‘REQUIRED INSURANCE
‘Buyer is required to have and maintain for the term of this contract, at Buyer’s expense, insurance against loss of or physical damage to the Boat (Hull Insurance), with a loss payable clause protecting lienholder (as interest may appear) and provision for ten-day notice of cancellation to lienholder, and against liability to others for use of Boat (Protection and Indemnity). Buyer has the right to obtain such insurance through an agent or broker or other person of Buyer’s choice as well as through Seller. If obtained through Seller, the costs of this insurance are: Hull $845.00, Protection & Indemnity $_ and Buyer’s election *1142 to obtain such insurance through Seller is shown by the inclusion of these costs in Item 4A below.’
Item 4A includes the $845.00 premium for hull insurance and also a $230.00 premium of life insurance. These sums were included in the total amount financed, and the mortgage provides for payment thereof in sixty monthly installments of $122.68, beginning March 17, 1974.
The credit application, note and chattel mortgage were prepared by Mrs. Olen Clark, the secretary-treasurer of National Boat Mart of Lake Charles, Inc., in accordance with previous instructions from General Electric Credit, and forwarded to the latter’s office. She testified that the $845.00 figure for the premium for hull insurance was obtained by her in a long distance call to the office of National Marine Insurance Group in St. Petersburg, Florida, with whom the defendants customarily did business. However, when General Electric Credit sent its check to this insurer on February 13, 1974, to cover the hull and life insurance premiums, it was returned because the amount of the former was insufficient.
Mrs. Linda Ballatin Standinger, who handled the matter for General Electric Credit, testified she called Mrs. Clark and discussed the matter [1]. Thereafter, she talked to Mr. Foreman on at least two occasions and to Mrs. Foreman on many more, telling them that she had not been able to obtain coverage on the boat’s hull and requesting that they attempt to get such insurance. She said that all their conversations were basically the same:
‘Yes, notifying them that there was still no coverage on the boat, we had to have coverage. You know, was she trying to secure coverage for the WIND-SONG? No, never. You know, she was never trying to get it. This was always left up to me to take care of, and I reminded her that this was one of the prerequisitions before the contract was approved, that the coverage must be secured, and she brought up the fact that it was in the contract, and as far as she knew that, you know, as far as she was concerned, rather, that we should hold, you know, to the figure that was in the contract.’ (Deposition — Pgs. 16 and 17.)
Mrs. Standinger denied that she ever said anything that might have led Mr. and Mrs. Foreman to conclude they did not have to worry about the insurance. Besides the National Marine Insurance Group, she also attempted to secure the coverage from State Farm Mutual Insurance Company, but was advised by Mr. Hunter Perrin, one of its local agents, by letter dated July 15, 1974, that his company would not insure the boat.
A policy of hull insurance was later obtained by General Electric Credit from the Manhattan Fire and Marine Insurance Company. However, the boat was damaged by high winds and began taking water while docked at Cameron around June 10, or 18, 1974, before such policy was issued.
Both Mr. and Mrs. Foreman admitted they had received telephone calls from a lady in General Electric Credit’s New Orleans Office prior to the vessel being damaged. However, both testified they were informed simply that the company which had the insurance on the boat wanted to cancel the policy, and it was going to be necessary to get hull insurance from another company. Mr. Foreman said he was not told anything about getting the insurance himself, but understood General Electric Credit was going to get the policy from another company. He asked if he was covered,'and was told by the lady that he was from the date he purchased the vessel. Mrs. Foreman testified that the lady wanted to know if they had any preference as to who would be the new insurer, or whether the Foremans wanted to get the insurance themselves. She replied that she did not know where to get such insurance, and was told that General Electric Credit would continue its efforts to get another insurer. Mrs. Foreman further stated she was never told that General Electric Credit could not or would not get the insurance, nor that the *1143 boat was not insured at any time after its purchase.
Mrs. Olen Clark testified that she was under the impression the boat was insured at the time it was sold and the forms were executed.
It was admitted that no offer was ever made to refund the plaintiff any part of the hull insurance premium. However, Mr. Robert Horton, General Electric Credit’s collection manager, testified that in the usual case where an insurance policy is can-celled, the unearned premium is credited to the loan balance. He admitted that his company would not have taken the assignment of the note and chattel mortgage if some provision for hull insurance had not been made.
At the trial the plaintiff’s objection to admitting in evidence D-3, certain handwritten notes allegedly made by Linda Bal-latin Standinger and others purporting to relate to telephone conversations between representatives of General Electric Credit and Mr. and Mrs. Foreman, was referred to the merits. The objection was based on the ground that the notes were hearsay. The defendant contends the notes were admissible under the business records exception to such rule.
Despite the prohibition of Articles 2248 and 2249 of the Louisiana Civil Code against admitting business records in favor of the party to whom they belong, our courts have seen fit to admit them under certain circumstances. Pritchard vs. Wolfe, 230 So.2d 612 (La.App. 3 Cir. 1970). In that case, the court quoted the following from the law review comment, Business Records in Louisiana as Exceptions to the Hearsay Rule, 21 La.L.Rev. 449:
‘The excellent comment above-cited concludes, 21 La.L.Rev. 459-60: ‘The modern Louisiana cases can be summarized as follows. Records of industrial and commercial organizations, as well as medical reports and hospital records are admissible as proof of their assertions if: (1) persons concerned with recording the information are unavailable for testimony, or production of such persons would be a needless burden; (2) the first collected record available to or usable by the court is introduced; (3) the records are identified at the trial by one familiar with the bookkeeping procedure; and (4) the evidence seems reliable after considering such factors as (a) contemporaneousness of the entry with the occurrence or fact recorded, (b) first-hand knowledge of the entrant, (c) existence of a business or professional duty to record or report the facts in the regular course of business, (d) completeness and honest appearance of the books, (e) absence of fraud in making the entries or in destroying the supporting memoranda and (f) perhaps, whether the books belong to a third party.’ (Page 614).
This court concludes that D-3 was not admissible in evidence, because it was not established that the persons concerned with recording the information thereon were unavailable for testimony or that calling them as witnesses would be a needless burden. Mrs. Standinger testified by way of deposition, but was not questioned as to anything appearing on D-3. No testimony was offered to establish what other person made entries on such document.
Turning now to the question of liability, the general rule of law applicable to a situation such as this appears as follows in Brown vs. Stephens Buick Company, 139 So.2d 579 (La.App. 4 Cir. 1962):
‘Plaintiff relies upon the general rule that an insurance agent or broker who undertakes to procure insurance for another owes an obligation to his client to use reasonable diligence in attempting to place the insurance and to seasonably notify the client if he, the agent or broker, is unable to obtain the insurance requested. In Louisiana a recovery has been allowed where the actions of the person procuring the insurance were such as to warrant an assumption on the part of the other party that he was covered by suitable insurance and thus protected from claims against which he desired to be insured.’ (Page 582. Underscoring by this court.)
*1144 In Bell vs. Precision Motors, Inc., 299 So.2d 886, (La.App. 4 Cir. 1974) the facts and the provisions for insurance in a sale and chattel mortgage were very similar to those in the case at bar. The court held the finance company liable to the buyer-mortgagor for his damages and said:
‘Commercial was not a stranger to the contract between plaintiff and Precision. By supplying the form contract which required insurance and by setting up the financing procedures as a prerequisite to accepting the assignment Commercial in effect required plaintiff in this case to pay the premium and to authorize the purchase of insurance. Under these circumstances Commercial became obliged to secure the insurance or to diligently attempt to notify plaintiff timely if unable to do so. Failing in this obligation. Commercial is liable for the damage thereby resulting to plaintiff, who reasonably relied on the belief that Commercial would obtain coverage.’ (Page 889. Underscoring by this court.)
Thus, the principal question to be decided by the court is whether or not the plaintiff could reasonably assume that he was covered by hull insurance from the time the vessel was purchased until it was damaged. This also required a determination of whether diligent efforts were made to notify the plaintiff that such insurance could not be obtained during such time.
Since Mrs. Clark believed the boat was covered by hull insurance from the time of its sale, the plaintiff certainly had the right to assume that such was the case until properly notified to the contrary. While the court believes that Mrs. Standinger did inform the plaintiff and his wife on more than one occasion before the boat was damaged that she was experiencing difficulty in obtaining the policy, the proof falls short of establishing that they were clearly and ine-quivocally [sic] told at any time that the boat was not insured against hull damage and they would have to get such a policy themselves. It is indeed strange that not one letter to this effect was written by General Electric Credit to the plaintiff after the sale and mortgage on February 4 or 5,1974, until the boat was damaged on June 10 or 18, 1974, or even thereafter, during which time the plaintiff assumed that such insurance was being obtained for him.
This court concludes that General Electric Credit was negligent in failing to so notify the plaintiff and is liable for the property loss which plaintiff sustained that would have been covered by such insurance. Since all of the parties understood that General Electric Credit and not National Boat Mart of Lake Charles, Inc. would obtain such insurance, the latter is not liable in this instance.”
The record bears out the factual and legal conclusions contained in the above quoted opinion and we find no abuse of discretion on the part of the district judge insofar as alleged errors Numbers One and Two are concerned. Canter v. Koehring Company, 283 So.2d 716 (La.1973).
We feel, however, that the district judge erred in awarding damages of Six Thousand Five Hundred ($6,500.00) Dollars. We find that plaintiff’s award must be limited to the allowable amount prayed for, i. e., Five Thousand ($5,000.00) Dollars for damages to the vessel, and Nine Hundred ($900.00) Dollars for mooring expenses, or a total of Five Thousand, Nine Hundred ($5,900.00) Dollars.
For the above and foregoing reasons the judgment of the trial court is amended so as to reduce the award to plaintiff to the principal sum of Five Thousand Nine Hundred ($5,900.00) Dollars, and except as amended is affirmed. Costs on appeal are assessed against appellant.

AMENDED AND AFFIRMED.

. Footnote by Appellate Court — Mrs. Standinger’s testimony was via a deposition.