AYRES, Judge.
This appeal concerns the interpretation of the extended coverage provisions of a fire insurance policy, issued by the defendant Northwestern Mutual Insurance Company, covering plaintiffs’ residence at 300 Jordan Street in the City of Shreveport, and the interpretation of the provisions of a contractor’s liability policy, issued by the defendant Aetna Insurance Company, as the provisions of both policies and the exclusions thereto relate to the collapse of the aforesaid residence while undergoing a floor-leveling process.
The facts pertinent to the issues presented for resolution are not in serious dispute and may be briefly stated. The residence herein concerned, approximately 40-50 years of age, was of stucco construction with plastered interior walls. When purchased by plaintiffs on June 15, 1962, the house was in apparent good condition other than the floors which needed leveling. The interior had been recently renovated. The vendors had, prior to the sale, discussed with one Ed Brockhaus, representing Ed Brockhaus, Inc., a proposition as to the leveling of the *574 floors of this house. A discussion of this matter was likewise had between plaintiffs and Brockhaus before the sale. Brockhaus assured them that he could make the necessary repairs very easily and without disturbing plaintiffs in their use and occupancy of the premises. The possibility of damage to the walls and ceiling was discussed; plaintiffs were told some minor cracks might appear. They were not informed nor were they made aware of the possibility of extensive damage.
Instead of undertaking the necessary repairs to the foundation, the vendors discounted the sale price of the house, whereupon plaintiffs made the purchase, moved in, and undertook the repairs on their own account through Brockhaus, who contracted therefor. The work began July 11th and continued through July 21, 1962. By the use of 20-ton hydraulic jacks and, for the last two days, 80-ton hydraulic jacks, the work was pursued section by section until the process was completed. Soon after the work was begun, cracks appeared in the plastered walls, becoming worse as the work progressed. The ceiling in a bedroom fell. Supports were used to prevent a similar fall in the kitchen. Eventually, when these supports were removed, the ceiling fell.
Brockhaus testified that, prior to undertaking the work, he informed the plaintiffs that extensive cracking of the walls and ceiling would probably result. This was denied by plaintiffs. The trial court concluded that the work would never have been undertaken had plaintiffs been informed of that fact.
A building contractor and an engineer testified, and the court so found, that the damage sustained was due to the fault of Brockhaus in attempting to level the floors section by section instead of as a whole. The record supports this view of the matter. These experts estimated that the damage exceeded $5,402.
From a judgment in favor of plaintiffs for the aforesaid sum against Ed Brockhaus, Ed Brockhaus, Inc., and against Aetna Insurance Company and the Northwestern Mutual Insurance Company, the latter two defendants appealed. Plaintiffs have answered the appeal praying for an award of statutory penalties and attorneys’ fees on account of the alleged arbitrary refusal to pay the claim herein sued upon.
On the question of liability, the defendant Northwestern Mutual Insurance Company denied that its policy afforded coverage for the damages sustained by plaintiffs for the reason there was no direct loss due to the collapse of the building. Moreover, this defendant contended, in the event of liability, it should be held subrogated to plaintiffs’ rights against the contractor and his or its surety. A provision of the policy issued by this defendant provides:
“This policy insures against all direct loss to the property covered caused by:
* x *
“14. Collapse of building(s) or any part thereof. * *
The defendant would limit the effect of this provision of the policy to the occurrences brought about by unusual and extraordinai’y circumstances which could not normally be expected or foreseen. Cited in support of this proposition is Anderson v. Indiana Lumbermens Mutual Ins. Co. of Indianapolis, Indiana, La.App., 2d Cir., 1961, 127 So. 2d 304, 307, wherein this court quoted from Jenkins v. United States Fire Insurance Company, 185 Kan. 665, 347 P.2d 417:
“ ‘When construed on the basis of intention, as required by the foregoing decision, and others therein cited, we believe the clause “collapse of building or any part thereof” as used in the involved insurance contract is to be interpreted as comprehending that, if brought about by unusual and extraordinary circumstances which the parties to that agreement could not normally expect or foresee on the date of its execution, the settling, falling, cracking, bulging or breaking of the in *575 sured building or any part thereof in such manner as to materially impair the basic structure or substantial integrity of the building is to be regarded as a “collapse” of the building within the meaning of that word as used in such clause of the policy.’ [185 Kan. 665, 347 P.2d 423].”
The damage to plaintiffs’ residence consisted of the physical collapse of the ceilings and the cracking and falling of the internal structure of the house. As heretofore pointed out, the occurrence of these things was neither expected nor foreseen. Under “OTHER PROVISIONS,” the policy permitted the making of alterations and repairs, as well as additions to the residence, and likewise permitted the completion of structures already begun. Such repairs directly attributable to the damage by any of the perils insured against, the policy recites, shall be included in determining the amount of loss. The loss sustained is attributable directly to the collapse of the building within the intent and purpose of the policy provisions affording coverage for damage occasioned thereby.
The defense of the Aetna Insurance Company is (1) that its contractor’s liability policy does not apply to property in the care, custody, or control of the insured, or to property over which the insured, for any purpose, is exercising physical control; and (2) that the policy extends no coverage to the moving, shoring, underpinning, raising, or demolishing of any building or structure, or the remodeling or rebuilding of any structural support, notwithstanding that this exclusion does not apply to operations stated in the declarations or excluded in the company’s manual from the operation of the exclusionary clause. Both of these defenses are, in our opinion, well-founded.
An insurance policy is a contract under the law, and the rules established for the interpretation of agreements are applicable. Accordingly, if the words of the policy are clear and express the intent of the parties, the agreement is to be enforced as written. Albritton et al. v. Fireman’s Fund Ins. Co., 224 La. 522, 70 So.2d 111; Oil Well Supply Co. v. New York Life Ins. Co., 214 La. 772, 38 So.2d 777; Hemel v. State Farm Mut. Auto Ins. Co., 211 La. 95, 29 So.2d 483. Moreover, the provisions of an insurance policy, as the provisions of any contract, have the effect of law between the parties thereto. LSA-C.C. Arts. 1901,1945; Indiana Lumbermens Mutual Insurance Co. v. Russell, 243 La. 189, 142 So.2d 391; Rogillio et al. v. Cazedessus, Individually, et al., 241 La. 186, 127 So.2d 734.
Words and phrases shall be read with their context and shall be construed according to the common and approved usage of the language. LSA-R.S. 1:3; LSA-C.C. Arts. 14, 16.
Thus,
“The words of a contract are to be understood, like those of the law, in the common and usual signification, without attending so much to grammatical rules, as to general and popular use.” LSA-C.C. Art. 1946.
In giving consideration and application to these rules, it can only be concluded that the insured had the care, control, or custody of, and, for the purpose for which he contracted the work, was exercising physical control over the property. For a period of 10 days the building was raised and supported by hydraulic jacks so that the proper shoring or underpinning might be done to level the floor and thus accomplish the object of the contract.
Moreover, the policy is clear that no coverage extends to moving, shoring, underpinning, raising, demolishing of any building or structure, or the rebuilding of any structural support thereof. The raising, shoring, and underpinning of the building, so as to level the floors, was the object and purpose of the contract.
In the policy declarations, the operations “carpentry” and “masonry” are noted as not otherwise classified. Therefore, as to *576 these occupations, the exclusionary clause has no application. The fact is, no contention is made that the work herein undertaken by Brockhaus consisted of masonry; the conclusion is equally well-founded that the work did not include carpentry. The work as undertaken, as heretofore noted, consisted of raising the building through the use of powerful hydraulic jacks and shimming or underpinning the foundation to level the floors.
Webster’s New International Dictionary, Second Edition, Unabridged, defines “carpentry” as follows:
“The carpenter’s trade or art; art of cutting, framing, and joining timber, as in constructing buildings. An assemblage of pieces of timber connected by being framed together, as in a roof; * * * »
The work undertaken did not involve either cutting, framing, or joining timbers, or the construction of a building; nor was it an assemblage of pieces of timber framed together. In the City of New Orleans v. Lagman et al., 43 La.Ann. 1180, 10 So. 244, reference was made to “carpenters” :
“They build houses and other structures. Their labor was manual and in its performance they used the spirit-level, the squares, the saw, hammer, and other carpenter’s tools. They manipulated and gave shape to the material in building.”
Under these definitions, the work undertaken was not carpentry.
The defendant Northwestern Mutual Insurance Company further contends that plaintiffs-appellees are not entitled to recover for the additional reason that they failed to minimize their loss or to protect their property from further damage in accordance with mandatory provisions of the policy. This defense is apparently predicated upon a basis that plaintiffs knew the work undertaken would and did, as it progressed, do the damage for which compensation is now sought. While plaintiffs were dissatisfied with the work, the evidence does not establish that they realized or appreciated the extent and the effect of the damage done or that it would result in a collapse of the interior of the building until such collapse had occurred or was inevitable. After coming to such realization, it is not shown they could have done anything effective to prevent or minimize the loss or damage ; nor is it shown that they had time or opportunity to do so.
Lastly, this defendant questions the award of damages. In this regard, the trial court correctly pointed out:
“Plaintiffs introduced in evidence the testimony of V. F. Beasley, president of V. F. Beasley Construction Company, Inc., and his estimate of the cost of repairing the interior of the building at $5,532.96, and the testimony of Mr. E. M. Freeman, of E. M. Freeman & Associates, Consulting Engineers, and his estimate of the amount of $5,000 for replacement of broken and demolished ceilings and to refinish the floor, plus additional expense for electric wiring and plumbing, and approximately 12% of the construction costs for architect and engineer fees.
“ * =1' * Mr. Beasley and Mr. Freeman both estimated the cost of repairing the damage to be in excess of the amount of $5,402 prayed for in this suit, but recovery must be limited to this amount for this damage.”
These witnesses testified that every room in the house was damaged. The damage was most pronounced in a bedroom and in the kitchen. The ceiling in the kitchen had fallen, knocking down the ventpipe to a hot-water tank and the hood over the range. The drainboards and faucets were also damaged, as were the floors, from the falling plaster. The estimates for repairs *577 were for the purpose of repairing the damage done to the house.
This defendant is entitled, however, to credit for the deductible portion of $50 as provided by its policy.
Plaintiffs’ demands for penalty and attorneys’ fees are denied, as it is obvious that Northwestern Mutual Insurance Company rejected plaintiffs’ claim on advice of their counsel, who was relying on the erroneous statement in the case of Anderson v. Indiana Lumbermens Mutual Ins. Co. of Indianapolis, Indiana, supra, that certiorari to the Supreme Court had been granted.
No reason has been advanced for denying to Northwestern Mutual Insurance Company its rights of subrogation to plaintiffs’ rights against defendants Brockhaus and Brockhaus, Inc. Accordingly, there will be judgment in its favor against said defendants whom it made third-party defendants in this cause.
For the reasons assigned, the judgment appealed is amended and recast; and
Accordingly, it is Ordered, Adjudged, and Decreed there be judgment herein in favor of Allie A. Wischan and Thelma O. Wischan against the defendants Ed Brock-haus, individually, and Ed Brockhaus, Inc., and Northwestern Mutual Insurance Company, in solido, for the full sum of $5,-352.00, with legal interest thereon from judicial demand until paid, and for all costs.
It is further Ordered, Adjudged, and Decreed there be judgment herein in favor of Northwestern Mutual Insurance Company against the defendants Ed Brockhaus, individually, and Ed Brockhaus, Inc., for the amount of the aforesaid sum, interest, and cost; that plaintiffs’ demands against Aetna Insurance Company and the demands of Northwestern Mutual Insurance Company against the said Aetna Insurance Company be, and they are hereby, rejected.
It is Ordered, Adjudged, and Decreed there be further judgment in favor of the plaintiffs against the defendant Northwestern Mutual Insurance Company fixing the fee of the expert witness, E. M. Freeman, at $50 and taxing the same as cost; that, as between plaintiffs and the defendant Northwestern Mutual Insurance Company, the plaintiffs and this defendant are each assessed with one-half of the cost, including the cost of this appeal; and, as thus amended and recast, the judgment appealed is affirmed.
Amended and affirmed.