171 So.2d 659

**Allie A. WISCHAN et ux.**

*v.*

**Ed BROCKHAUS et al.**

**No. 47316.**

Jan. 18, 1965.

Rehearing Denied Feb. 23, 1965.

Bodenheimer, Looney & Jones, J. W. Jones, Cook, Clark, Egan, Yancey &

King, Benjamin C. King, Shreveport, for plaintiffs-relators.

Lunn, Irion, Switzer, Trichel & Johnson, Richard H. Switzer, Shreveport, for respondent.

HAMITER, Justice

The plaintiffs herein, Allie A. Wischan and Thelma O. Wischan (husband and wife), sued in tort to recover for the damage caused to their residence in Shreveport by the alleged negligence of Ed Brockhaus (representing Ed Brockhaus, Inc.) while leveling the floors of such building under a contract with them. In addition to Brockhaus, others made defendants in the tort demand were Ed Brockhaus, Inc. and its liability insurer, Aetna Insurance Company (hereinafter called Aetna).

Also named a defendant in the suit was the Northwestern Mutual Insurance Company (referred to hereinafter as Northwestern), its alleged responsibility being based on an insurance contract issued to plaintiffs for fire and extended coverage on the damaged house.

Neither Brockhaus nor Ed Brockhaus, Inc. answered.

Aetna defended on the ground that its liability policy excluded the risk involved herein.

Northwestern denied liability, taking the position that its policy did not cover

the loss. Additionally, such defendant filed a third party petition against Brockhaus, Ed Brockhaus, Inc. and Aetna (as being the parties primarily liable), praying for any judgment which might be rendered against it.

Following trial, the district judge found that the damage to the residence was due to the negligence of Brockhaus in attempting to level the floors through a section by section performance instead of by means of an entire or whole operation. Also, he held that the loss was covered by both policies.

Accordingly, judgment was rendered in the district court in favor of plaintiffs against Brockhaus, Ed Brockhaus, Inc. and Aetna in the amount of $6902, as well as against Northwestern for the sum of $5402, the decree respecting the latter (the third party petition of which was maintained) to become executory only in the event plaintiffs' judgment against the other defendants could not be collected. (The difference in such amounts resulted from the fact that the total claim included special items such as inconvenience, embarrassment, etc. which were not allowable on the contract demand against Northwestern.)

Aetna and Northwestern appealed. The Court of Appeal concluded that the loss was covered by Northwestern's extended coverage contract, but that the Aetna liability policy excluded the risk involved. The decree, therefore, affirmed the judgment rendered in favor of plaintiffs and against Brockhaus, Ed Brockhaus, Inc. and Northwestern (except as to the latter the judgment was reduced by $50 because of the deductible clause of the policy); but it dismissed the claims of plaintiffs and Northwestern as against Aetna. See 163 So.2d 572.

The case is presently before us on certiorari issued at the instance of plaintiffs and Northwestern. See 246 La. 585, 165 So.2d 482.

Northwestern no longer denies liability to plaintiffs under its contract and seeks only to have the judgment of the district court affirmed. Further, no complaint is made here by any of the parties as to the amount of damages found by the Court of Appeal to be due. Consequently, only the question of Aetna's responsibility on the contractor's liability policy is presented for our consideration.

Inasmuch as Northwestern now admits its contractual liability to plaintiffs, and since is appears with them in this court through a joint brief, reference hereinafter to plaintiffs' contentions will (for the sake of brevity) include those of Northwestern even though the latter is not specifically mentioned.

The principal facts, which are not seriously disputed, are that under a contract Ed Brockhaus, Inc., represented by its president Ed Brockhaus, undertook to level the

floors of the residence of plaintiffs which they had purchased a short time previously. He told them that all of his work would be performed outside and under the house, and that they could move into the premises and remain there while the work progressed. The leveling of the floors required that the building be raised by the use of jacks, both manual and hydraulic, and that thereafter additional piers be installed. Apparently, also, some of the old piers were to be repaired.

The plaintiffs moved into the residence and were living there when and after Brockhaus began work. Almost immediately, with the commencement of the house raising, cracks appeared in the various interior, plastered walls and ceilings. As the job progressed they increased in number and severity; and, ultimately, the ceilings of two rooms collapsed, as did some portions of the walls. As we have noted, the plaintiffs contend that the negligence of Ed Brockhaus, Inc. in the leveling operation caused the damage, and that its liability insurer, Aetna, was and is liable therefor.

The insuring agreement executed by Aetna in favor of Ed Brockhaus, Inc. is a manufacturers' and contractors' liability policy. In "Coverage B", relative to liability for property damage, it recites that the insurer will " * * * pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident and arising out of the hazards hereinafter defined."

In division 1 of the "Definition of Hazards" it is said: "Premises—Operations. The ownership, maintenance or use of premises, and all operations."

In Item 4 of the "Declarations" the following statements, among others, are contained:

"DESCRIPTION OF HAZARDS

"The rating classifications under the Description of Hazards do not modify the exclusions or other terms of this policy.

| | | Code Nos. |
|---|---|---|
| "1.  Premises—Operations | | |
| "Carpentry | N. O. C. | 3457 |
| "Masonry | N. O. C. | 3447 |

"Concrete construction N. O. C.—including foundations, making, setting up or taking down forms, scaffolds, falsework or concrete distributing apparatus, excavation, pile driving & all work in sewers, tunnels, subways, caissons or coffer dams to be separately rated          5213"

The "Exclusions", insofar as they relate to this case and on which Aetna relies, provide: "This policy does not apply:

" * * * *

"(1) under coverages B * * * to injury to or destruction of * * * property in the care, custody or control of the insured or property as to which the insured for any purpose is exercising physical control, * * *."

" * * * *

"(n) under coverage B, with respect to division 1 of the Definition of Hazards, to injury to or destruction of any property arising out of * * * (2) *the collapse of or structural injury to any building or structure due* (a) to grading of land, excavation, borrowing, filling, back-filling, tunneling, pile driving, coffer-dam work or caisson work, or (b) *to moving, shoring, underpinning, raising or demolition of any building or structure* or removal or rebuilding of any structural support thereof; *provided, however,* part (1) or *part (2) of this exclusion does not apply to operations stated, in the declarations* * * *, *as not subject to such part of this exclusion.*" (Italics ours.)

Actna contends that its policy is ineffective (1) because the damaged property was in the care, custody or control of the insured (Ed Brockhaus, Inc.), thus bringing the loss within the first above quoted exclusion clause and (2) because the insured's

work that caused the damage was the raising of the building—a risk that falls specifically within paragraph (n) (quoted above) of the "Exclusions."

Each of the two exclusions relied on is independent of the other, and it is conceded by plaintiffs that if either is applicable there is no liability on the part of Aetna for the loss sustained.

Seemingly, the first exclusion invoked is without application, for it appears from the evidence that the insured contractor did not have custody and control of the damaged portions of the premises, his undertaking having been confined exclusively to work outside and underneath the house while the Wischans were living therein and had complete and absolute charge of the interior parts that were damaged. Nevertheless, we need not and do not pass upon the effectiveness of that exclusion, because we are convinced that the aforequoted and emphasized provisions of paragraph (n) fully relieve Aetna of responsibility for the damage occasioned.

Our review of the record satisfies us that the sole cause of the loss was the improper manner or method employed in raising the house—not to any imperfect installation or repair of piers. This is reflected in the testimony of the experts who viewed the building in its damaged condition, as well as in that of the persons who were on the scene while the work was progressing.

The latter witnesses testified that the cracking of the plaster commenced as soon as the jacking of the house started, and that more occurred as more raising was accomplished. Further, they said that eventually, by reason of the jacking, almost all of the walls had cracked severely and that in some of the rooms a great amount of the plaster had fallen from the ceilings.

While there is some evidence that concrete piers were later placed under the building, there is no proof whatever that the installation of them had any causal connection with the damage. Further, it was not shown that any carpentry work either contributed to the loss or was even performed.

Plaintiffs argue that in an insurance policy such as the present one the terms carpentry, masonry, concrete work, etc., should be taken in their broadest sense so as to include house raising. We seriously doubt that a fair interpretation of those terms, as they are generally understood, would include the specialized field of house raising with jacks. But certainly they cannot be so interpreted when the policy explicitly excludes house raising from its coverage, as does the instant contract in paragraph (n) (2) (b) of the "Exclusions."

In this connection the plaintiffs point to the proviso contained in (n) (2) (b) and contend that it has the effect of making the exclusion inoperative inasmuch as the "Declarations" of the policy list carpentry, masonry and concrete construction, including foundations. Thus, in their brief to this court, they argue: "The Court of Appeal erroneously reached the conclusion that Exclusion (n) of the policy applied in this case and that the contractor was not covered for any injury to property resulting from the moving, shoring, underpinning, raising or demolition of any building. However, the exclusion is inapplicable in the present case because the exclusion itself expressly provides as follows:

" 'Provided, however, * * * this exclusion does not apply to operations stated in the declarations.'

"Moreover, coverage is afforded the contractor for 'carpentry', 'masonry' and 'concrete construction, including foundations' under the Declarations section of the Actna policy which was typed and added thereto. * * *"

Our giving approval to such contention would have the effect of completely deleting from the policy (n) (2) (b) of the "Exclusions." Besides, it considers only a part of the proviso; it disregards a very pertinent portion thereof. The proviso, insofar as appropriate here, reads: "provided, however, part (1) or part (2) of this exclusion does not apply to operations stated, in the declarations * * *, *as not subject to such part of this exclusion*." (Italics ours.)

The proviso, read as just quoted, clearly means that exclusions in parts (1) and (2) shall be inapplicable to operations if and when the "Declarations" indicate that such works are not subject to the particular exclusions. For example, if the raising of buildings had been covered in the policy's "Declarations" the specific exclusion relating thereto in part (2) of paragraph (n) would be inapplicable. But such "Declarations" do not even mention that operation.

This interpretation not only gives effect to all of the language of the proviso, but it also affords a sensible meaning to the entirety of paragraph (n) of the "Exclusions". Significantly, in this connection, it is stated at the commencement of Item 4 of the "Declarations" that "The rating classifications under the Description of Hazards do not modify the exclusions or other terms of this policy."

Besides, we think that the typewritten portions of the "Declarations" (those which describe the hazards covered), by specifically including certain hazards that are excluded by paragraph (n), make it abundantly clear as to the meaning of the latter paragraph—viz., that in order for the excluded hazards to be covered they must be particularly listed in the typewritten provisions and separately rated. Thus, as shown in the above quotation of paragraph (n), the part (2) (a) excludes damages caused by excavations, tunnelling, pile driving, coffer-dam

work and caisson work. Yet, in the "Declarations", in connection with the listing of concrete construction, it is specifically stated that this operation includes, among other things, "excavation, pile driving and all work in sewers, tunnels, subways, caissons, or coffer-dams to be separately rated."

Therefore, we conclude that since nothing in the "Declarations" indicates that the hazards listed there would not be subject to the particular exclusion of building or structure raising, such exclusion remains applicable and effective; and Aetna is not liable for the damage brought about solely by the house jacking or raising operation of Ed Brockhaus, Inc.

Plaintiffs cite three cases in support of their contention that the general listings in the declarations should be broadly interpretated to include house raising, namely, Lewis et al. v. Fidelity and Casualty Company of New York, 304 Pa. 503, 156 A. 73, Protane Corporation v. Travelers Indemnity Company, 343 Pa. 189, 22 A.2d 674 and Joseph N. Eisendrath Company v. Gebhardt et al., 124 Ill.App. 325.

Each of the first two cases deals with the interpretation of a contractors' and manufacturers' liability insurance policy and would, perhaps, be applicable and persuasive but for the fact that the contract there considered did not specifically exclude the particular hazard which the insured contended came within the general definition

of his business operations and was necessary and incidental thereto. The third case, involving the enforcement of a building lien, is also inapplicable as a reading thereof will clearly demonstrate. Suffice it to say that the court did not hold, as stated in plaintiffs' brief, that "masonry" includes "excavations".

For the reasons assigned the decree of the Court of Appeal is affirmed.

McCALEB, J., concurs in the decree.