367 So.2d 111 (1979)
Suzanne WEXLER, wife of/and Nathan Wexler, M. D.
v.
Austin MARTIN et al.
No. 9612.
Court of Appeal of Louisiana, Fourth Circuit.
January 10, 1979.
Rehearing Denied February 15, 1979.
For Concurring Opinion in Denial of the Application for Rehearing March 13, 1979.
*112 Steven R. Plotkin, New Orleans, for plaintiffs-appellees.
Murphy & Simon, E. Kelleher Simon, New Orleans, for defendants-appellants.
Before SAMUEL, LEMMON and GARRISON, JJ.
For Concurring Opinion in Denial of the Application for Rehearing March 13, 1979. See 369 So.2d 273.
LEMMON, Judge.
Defendants' appeal in this personal injury litigation essentially questions the quantum of the jury verdict, although several significant procedural issues are also presented.

I
The original petition, filed in November, 1976, demanded $20,000.00 in general damages for past and future pain and suffering resulting from unspecified injuries sustained by Mrs. Nathan Wexler and $239.47 in medical expenses. After the jury was impaneled on the first day of trial in October, *113 1977, Mrs. Wexler's counsel attempted to file a supplemental and amended petition which increased the demand for pain and suffering to $200,000.00 and added claims for future medical expenses and for a lumbosacral corset. The trial judge refused to permit the pleading to be filed at that stage of the proceeding, and the trial proceeded on the basis of the demands in the original petition.
After presentation of the evidence was completed, but before closing arguments and jury instructions, Mrs. Wexler's counsel filed a "Motion to Amend Pleadings to Conform with the Evidence". This pleading, which was allowed by the trial court over defendants' objection, increased the demand for pain and suffering to $100,000.00 (the limits of defendants' liability insurance policy) on the basis that the "evidence adduced at trial on the merits in this case reveals injuries and damages in excess of those pleaded in the original petition".
The jury returned a verdict awarding $41,000.00 to Mrs. Wexler and $14,000.00 to her husband, which plaintiffs' counsel concedes could only be for any proved past and future medical expenses.

II
Defendants first argue that since the judgment cannot exceed the demand, the award must be reduced at least to the amount demanded in the original petition. Implicit in this argument is the contention that the post-trial motion to conform the pleadings with the evidence was improperly allowed and therefore the only pleading properly before the court was the original petition.
Under C.C.P. art. 1154 an issue which has not been raised by the pleadings, but has been tried by the express or implied consent of the parties, must be treated in all respects as if the issue had been raised by the pleadings. Accordingly, the pleadings may subsequently be amended, even after judgment, to reflect the enlargement by evidence introduced without objection, but "failure to so amend does not affect the result of the trial of the issue".
The purpose of C.C.P. art. 1154 is to recognize the principle that pleadings may be enlarged by evidence introduced without objection. Once such evidence has been introduced, then the pleadings may be formally amended as a housekeeping measure, but formal amendment is not necessary to allow a judgment based on the evidence which enlarged the pleadings.
In the present case the issue of damages for past and future pain and suffering was raised by the original petition, and there was no point in the presentation of evidence on this issue at which defendants could have objected to an enlargement of the pleadings. C.C.P. art. 1154 was therefore not an appropriate procedural tool under these circumstances, since the motion was not addressed to new issues omitted in the original petition and enlarged by evidence, but rather was essentially an attempt to amend the original petition by increasing the amount of the demand for pain and suffering.
We therefore conclude the motion to conform the pleadings to the evidence was improperly allowed. Viewing the original petition as the only pleading properly addressed to this issue, we now turn to the naked issue of whether the amount of the judgment can exceed that of the demand of the prayer.

III
In their petition plaintiffs alleged items of general damages, estimating the amount thereof, and at trial they presented evidence to support the demand for relief. The judgment granted the relief in an amount greater than the estimated amount listed in the original petition.
Pertinent to the decision of this issue is C.C.P. art. 862, which provides:
"Except as provided in Article 1703, a final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings and the latter contain no prayer for general and equitable relief."
*114 At the threshold we observe that there is no requirement in the Code for specific allegations of items of general damage.[1] Logically, if there is no need to itemize or estimate general damages, there should be no penalty or limitation on a party who does so.
The exception in the introductory clause of C.C.P. art. 862 is also significant. Inasmuch as the excepted article (C.C.P. art. 1703) expressly provides that a judgment by default cannot exceed in amount that demanded in the petition, the general article (C.C.P. art. 862) should logically be interpreted to mean that other types of final judgments can exceed in amount that demanded in the petition. Of course, this is particularly persuasive since, as noted above, there is no requirement for itemization or estimation of general damages in the first place.
Furthermore, the source of C.C.P. art. 862 is Federal Rule 54(c), and the federal cases interpreting that rule consistently allow judgments to exceed the amount of the demand. 10 Wright & Miller, Federal Practice and Procedure § 2664 (1973); 3 Barron & Holtzoff, Federal Practice and Procedure § 1194 (1958); 16 A.L.R.Fed. 748, § 26 (1973).
We are aware of, but disagree with, the case of Watson v. Morrison, 340 So.2d 588 (La.App. 1st Cir. 1976), in which the First Circuit held, in a divided decision, that C.C.P. art. 862 and 1841 were not intended to allow a trial court to award general damages in excess of the demand.[2] However, another panel of that circuit in Cohrs v. Meadows, 342 So.2d 1172 (La.App. 1st Cir. 1977), applied C.C.P. art. 862 to award 500 weeks of workmen's compensation benefits, although the claimant had only demanded 400 weeks in the prayer of her petition. Moreover, in Cambrice v. Fern Supply Co., 285 So.2d 863 (La.App. 4th Cir. 1973), this court refused to limit the award for future medical expenses to the amount demanded in the petition.
We also acknowledge the argument that if the judgment is allowed to exceed the demand, an insured defendant who is sued for an amount below the policy limits will not be able to rely on the lesser demand as an assurance that he will have no liability above those limits. There are several answers to this argument. First, this argument has no specific applicability in this case, since the judgment does not exceed the policy limits. Second, as a practical matter and as a matter of present-day trial strategy, the demand usually exceeds the policy limits, unless the limits are extremely high and the damages are extremely slight. (And when the demand exceeds the policy limits in the cases which come before the court, seldom does the individual defendant seek separate representation.) Finally, any argument justifying the limitation of the judgment to the demand should have been addressed to the legislature prior to 1961, when that body changed the prior law by adopting C.C.P. art. 862 to provide that the amount of the demand is only relevant to default judgments. See also Budget Plan of B. R., Inc. v. Talbert, 276 So.2d 297 (La.1973), which discusses C.C.P. art. 862, 865, 2164 and 5051 as requiring liberal construction of pleadings so as to afford relief to which the party is entitled.
We accordingly reject defendants' argument that the judgment should be reduced for the reason that the amount of damages for pain and suffering exceeds the amount demanded in the petition.

IV
Defendants next contend the trial judge erred in permitting evidence that they had paid the Wexlers' automobile damage.
*115 Evidence of payment of some damages by the alleged tortfeasor is completely irrelevant to any issue in this case and should have been excluded. As is the case with any irrelevant evidence, the problem is that this evidence appears to the jury to prove something that it does not actually prove, namely, that defendants were liable for the accident. However, the issue of liability, although contested in the trial court, is now conceded on appeal.
Defendants argue, nevertheless, that evidence of this apparent admission of liability prior to trial by a party contesting liability at trial had a prejudicial effect on the jury which set quantum. While not passing specifically on this doubtful argument, we note that any prejudicial effect on the jury was cured by the trial judge's admonition in admitting the evidence that the payment was not to be considered as an admission of liability.

V
Defendants next contend that counsel for plaintiffs usurped the function of the judge by instructing the jury as to the law in closing argument. This contention must be discussed in the context in which the situation arose.
During closing argument counsel for defendants, in rebutting plaintiffs' counsel's argument that asked for an award in the $200,000.00 range, pointed out that the original petition filed almost a year after the accident demanded only about $21,000.00.[3] Then in rebuttal argument counsel for plaintiffs explained that since petitions are often hurriedly drafted from interview notes, the law in its wisdom allows amendment to the pleadings as the situation changes. When the court maintained an objection to counsel's instructing the jury on the law, counsel attempted to explain to the jury what had happened when the judge allowed his motion to conform the pleadings to the evidence and stated that the jury could now award any amount of damages it deemed proper on the evidence. Defendants' counsel then objected, whereupon counsel then argued between themselves over whether the judgment legally could exceed the amount of the demand. In the course of the bickering plaintiffs' counsel referred to an appellate decision by name and citation.
Undoubtedly, it was improper for counsel to state points of law and to cite appellate decisions to the jury. See discussion in Little v. Hughes, 136 So.2d 448 (La. App. 1st Cir. 1961). However, the main impropriety in this respect occurred when counsel argued with each other, rather than addressing objections and arguments to the court.
In retrospect the jury should never have become involved in the legal question of whether the judgment could exceed the amount of demand. However, while defendants contend in brief that the trial judge erred to their prejudice by failing to exercise proper control over closing argument, upon review of the record we cannot say that the improper bickering between counsel and the comments and arguments which led up to the bickering were more prejudicial to defendants than to plaintiffs.

VI
Defendants finally contend the awards for general and special damages were so excessive as to constitute an abuse of the jury's discretion.
Prior to the accident herein sued upon, Mrs. Wexler had suffered in May, 1973 a spontaneous onset of low back pain. Dr. Irving Redler, the treating orthopedic surgeon, diagnosed a ruptured lumbar disc and *116 prescribed bed rest, heat, medication, and eventually a lumbar corset. By June she complained of pain only when arising in the morning, and in November the physician pronounced her completely well and discharged her, commenting that the vast majority of patients with this condition recover without surgery.
Mrs. Wexler was again injured in a February 4, 1975 automobile accident, and Dr. Redler diagnosed acute strain of the neck and lower back and possible reactivation of the previous disc injury. After four treatments in two months Mrs. Wexler had back pain only when pressure was applied, and she was eventually discharged on May 20 as fully recovered.
Mrs. Wexler resumed normal activities with no problems until the injury in suit occurred on November 10, 1975, when a wrecker ran into her car. On the basis of spasm, restriction of motion, and a positive straight leg raising test, in addition to complaints of back pain radiating into the legs, Dr. Redler diagnosed acute back strain and possible aggravation of the previous disc injury. He prescribed bed rest, restriction of activity, and a lumbosacral corset.
Her condition remained essentially the same through January, 1976, at which time her main complaints of pain were at the end of the day. In April, 1976 X-rays revealed narrowing of the disc spaces, indicating degeneration of the disc. Since the narrowing was not there before and would not normally be expected at age 33, Dr. Redler attributed this change to the November accident. Noting that she had fully recovered from the previous incidents and was free of pain prior to the November accident, he stated that the degenerative changes seen on the X-rays would account for her persistent low back pain. He further described the condition as permanent and progressive.
Mrs. Wexler began exercises prescribed by Dr. Redler and improved by June. Although she still had nagging back pain which radiated into the right leg, he released her in October, 1976, advising her to return if the symptoms worsened.
She did return in October with the same complaints, but there were no objective findings. Then in May, 1977 she returned with severe complaints and exhibited spasm and limitation of range of motion, but she denied any intervening incident. By July she had improved somewhat with heat applications, bed rest and continuation of the corset. On September 29, 1977, about six weeks before trial, she was still wearing the corset and still exhibited spasm, restriction of back motion, and pain on straight leg raising.
Dr. Redler assigned a 10 to 15% permanent disability of the back, attributable to the November, 1975 accident, and stated "(s)he probably will continue to have problems". He added "I also think that someday she may have some surgery". However, he testified he did not contemplate surgery "at this time", but would recommend fusion if the disc continues to degenerate and the arthritic changes become more severe. He stated there had been no increase in the degree of change between April, 1976 and September, 1977, and he had not performed a myelogram or other tests to confirm a ruptured disc because he did these only when he contemplated surgery.
Another orthopedic surgeon examined Mrs. Wexler the week before trial and found no "definite spasm" and no significant narrowing on the September, 1977 X-rays. From the examination, history and review of Dr. Redler's records he concluded that in the November, 1975 accident Mrs. Wexler had aggravated her original back problem, which he characterized as a low back sprain syndrome. However, he opined that the problem originated in 1973 and that 11 months after the November, 1975 accident, she had reached her pre-injury functional capacity.
Although there were obvious proof problems with causation and extent of disability attributable to this accident, there was ample evidence in the record to support a finding of injury caused or aggravated by this accident by which the jury could have awarded $41,000.00 without abusing its *117 "much discretion" accorded by C.C. art. 1934(3).
The award of $14,000.00 to Mrs. Wexler's husband, however, cannot be supported. The evidence established past medical expenses of $334.69. While there was some estimate of the cost of future medical expenses (about 10% of the award), there was no showing that, more probably than not, these expenses will be incurred. The probability of surgery, based on this record, is far too speculative to support an award for future expenses in this regard. The award to Mrs. Wexler's husband must therefore be reduced to $334.69.
Accordingly, the judgment of the trial court is amended to reduce the judgment in favor of Nathan Wexler from $14,000.00 to $334.69. As amended, the judgment is affirmed. Costs of the appeal are assessed against defendants.
AMENDED AND AFFIRMED.
SAMUEL, J., dissents in part and assigns reasons.
SAMUEL, Judge, dissenting in part.
In my view, C.C.P. Art. 862 (what is hereinafter said about C.C.P. Art. 862 also is applicable to C.C.P. Art. 2164) does not change the prior, long established Louisiana rule, both before and, more importantly, since the effective date of the adoption of our present Code of Civil Procedure, that a plaintiff may not be awarded more in money damages than the amount prayed for.[1] The comments appearing under Article 862 show that article was intended to eliminate a necessity for a prayer for general and equitable relief (it should be noted the rule limiting recovery to the amount prayed for was applicable despite a prayer for general and equitable relief) and to suppress the harsh and unduly technical "theory of the case" doctrine in Louisiana. Nor do the comments under Article 2164 indicate any intent to change the rule.
If a change of the rule referred to was intended to be made by Articles 862 and 2164, that end could and, in my opinion, would have been accomplished by specific language either in the articles themselves or in the comments under the articles.
A liberal construction of pleadings to afford relief to an entitled party must be balanced against the consistent position of the Code in requiring fact pleadings, fair notice and the avoidance of surprise. Nor should we be unduly influenced by federal cases interpreting Federal Rule 54(c); the federal courts do not have our fact pleading requirement.
For these same reasons C.C.P. Art. 1703 does not establish a departure from the rule; it merely emphasizes the rule which is especially important in default judgments. As I have indicated, if such a departure was intended, the Code would have spelled out the same rather than leave the matter for strained interpretations of its various articles.
While I agree with the majority's reduction of the trial judgment award to Nathan Wexler, I am of the opinion that Mrs. Wexler's award for pain and suffering should be reduced to the amount for which she prayed. The reasons stated above and those cases cited in footnote 1 which were controlled by the provisions of the Code of Civil Procedure compel the latter conclusion.
Accordingly, to the extent expressed in the last preceding paragraph, I respectfully dissent.
NOTES
[1] Indeed, C.C.P. art. 861's express requirement that "(w)hen items of special damage are claimed, they shall be specifically alleged" implies that when items of general damage are claimed, there is no need for alleging these with specificity.
[2] The Supreme Court denied a writ of certiorari, with two justices dissenting on this point. 342 So.2d 218.
[3] The propriety of this argument was questionable. One schooled in law would know that the amount of the demand for general damages is virtually meaningless. However, when counsel for defendants exhibited an official document filed in official court records as part of his argument, perhaps a jury of lay people could have been unduly influenced by the amount of the demand. (Nevertheless, the argument was cut off by the court shortly thereafter when counsel argued that he had only once before seen a petition that demanded less than $20,000.00.)
[1] Friedman Iron & Supply Co. v. J. B. Beaird Co., 222 La. 627, 63 So.2d 144; State Dept. of Highways v. Terrebonne, La.App., 349 So.2d 936, writ denied, La., 351 So.2d 166; Foreman v. General Elec. Credit Corp., La.App., 344 So.2d 1140; Watson v. Morrison, La.App., 340 So.2d 588; Jones v. Louisiana Dept. of Highways, La.App., 338 So.2d 343; Alumaglass Corp. v. Adm'x of Succession of Kendrick, La. App., 303 So.2d 911; Bewley Furniture Co., Inc. v. Maryland Casualty Co., La.App., 271 So.2d 346; Lawrence v. Recoulley, La.App., 235 So.2d 437; Sterkx v. Gravity Drainage Dist. No. 1 of Rapides Par., La.App., 214 So.2d 552; Wischan v. Brockhaus, La.App., 163 So.2d 572, affirmed, 247 La. 392, 171 So.2d 659.