BOWES, Judge.
Defendant-appellant Albert J. LeBreton (hereinafter A.J.) appeals a judgment in favor of plaintiff-appellee Great Southern Life Insurance Company (hereinafter Great Southern) and the original and third party defendant Gerald LeBreton (hereinafter Gerald). We affirm.
A.J. was hospitalized at Keesler Air Force Base in Biloxi, Mississippi, during April and May of 1982 (the precise dates are not clear from the record). While in the hospital, A.J. executed a general power of attorney in favor of Gerald LeBreton, his son, on May 7, 1982. Several months earlier, in approximately February of 1982, A.J. had opened a joint checking account with Gerald at the Whitney Bank, at AJ.’s own insistence, so that Gerald “can write checks on the account.” While at Keesler, and after the power of attorney had been executed, A.J. learned that his estranged wife, Patricia, had died. A.J. instructed Gerald to obtain the life insurance policy which he had maintained on Patricia, with himself as beneficiary, and to make the necessary claims. Gerald did so, and, on June 8, 1982, Great Southern issued a check in the amount of $39,975.89 payable to A.J., the named beneficiary, but sent it to Gerald pursuant to the power of attorney. Gerald deposited the proceeds into the joint Whitney account. On June 21, 1982, Gerald wrote three checks on the Whitney account, payable to his wife, Lucille LeBreton, in the amounts of $10,-000.00, $10,000.00 and $19,975.00. (Another insurance check from a second company, in the amount of $11,000.00, was also received by Gerald, as mandate for A.J., and also withdrawn by Gerald in a check to Lucille. These proceeds are not at issue in the present matter, but do form part of appellant’s argument on appeal, below).
On July 23, 1982, A.J., now recovered, out of the hospital and on hostile terms with Gerald, attempted to revoke the April mandate (and again on October 5, 1982, he executed a second revocation). On September 23, 1982, Mr. Kenny Charbonnet, an attorney, had written to Gerald on behalf of A.J., informing him (among other things) that A.J. no longer wished for Gerald to “represent him ... with anyone;” that the joint bank account had been closed; and requesting return of several items, notably: “(e) The check for $20,975.00”[1]
On October 30, 1982, A.J. and Gerald entered into a compromise in which Gerald returned the items enumerated in AJ.’s demand, and, in consideration of and the return of the sum of $19,975.00, A.J. released Gerald in the following agreement:
“I, Albert J. St. Mesme LeBreton, Jr., hereby agree to a release and give up whatever claims or rights that I have against my son, Gerald LeBreton. In particular, I release Gerald LeBreton from any breaching of any fiduciary duties which he may have had as my agent appointed by Power of Attorney.
Any and all claims that I, Albert J. St. Mesme LeBreton, Jr., had against Gerald LeBreton is [sic] settled for the sum of Nineteen Thousand Nine Hundred Seventy-five and 00/100 ($19,975.00).”
The release was signed by both A.J. and Gerald. On the same date, Gerald signed another document which essentially authorized A.J. to receive the remainder of a legal retainer, previously paid for by Gerald on AJ.’s behalf, to an attorney to represent A.J. in a matter extraneous to these proceedings (that amount represented an additional $2,987.00 which A.J. received).
The matter between father and son appeared to be settled until Great Southern wrote to A.J. in January, 1983, stating that the insurance payment of June, 1982, had been overpaid in error, and that the actual payment due was $20,036.08. Great Southern demanded repayment of the excess $19,939.81. When A.J. failed to respond, Great Southern filed the instant suit against both A.J. and Gerald.
A.J. filed an answer and third party demand against Gerald, generally asserting that Gerald had received the funds for *1308 warded by Great Southern and that, after AJ.’s demand for return of these funds, Gerald agreed to return one-half the amount (this presumably was reference to the compromise, infra). Therefore, alleged A.J., Gerald, and not he, was in possession of the overpayment sought by Great Southern and consequently Gerald was indebted to A.J. for any amounts recoverable against him. A.J. filed no further pleadings.
Gerald answered the third party demand, pleading res judicata, based on the release; remission and donative . intent was also urged by Gerald as defense to the third party demand.
All parties stipulated that the June 8, 1982, payment was in error, and that the correct amount due was $20,036.08, leaving an outstanding payment owed to Great Southern of $19,939.81. After trial on the merits, the trial court granted judgment in favor of Great Southern and against A.J. for $19,939.81, and dismissed both Great Southern’s and AJ.’s cases against Gerald, finding that at all times he acted as agent on behalf of A.J. and was not personally liable to Great Southern. Further, the court found that the release and compromise relieved Gerald of any liability in connection with his fiduciary duties to A.J. Only A.J. has appealed.
Appellant urges that the release and compromise of October 30, 1982, was null and void due to bilateral error under LSA-CC. art. 1949; further, he alleges that LSA-C.C. art. 3005 “overrides” the terms of the release.
LSA-C.C. art. 1949 reads:
Error vitiates consent
Error vitiates consent only when it concerns a cause without which the obligation would not have been incurred and that cause was known or should have been known to the other party.
A.J. asserts that the cause underlying the Release and Compromise was the belief that the amount of $50,975.00 in insurance proceeds (the Great Southern policy and the other $11,000.00 policy) were the property of A.J. despite Gerald’s “adverse possession.” This belief was based on an error made by a third party, namely Great Southern. Argues A.J.:
"Mr. LeBreton knew only that two insurance claims had been paid in a total amount of $50,975.89, that the funds had been removed from his (A.J. LeBreton’s) bank account and placed in the possession of his son and his son’s wife, that he had no access to those funds, and that he had to negotiate a Release and Compromise with his son, his mandatory, in order to get possession of any of his money.
To give Gerald LeBreton the benefit of the doubt, both parties to the Release and Compromise agreement believed that all of the monies they were bargaining over belonged to A.J. LeBreton when, in fact, nearly $20,000.00 of it belonged to Great Southern Life Insurance Company. The cause, the reason, for confecting the Release and Compromise was that A.J. LeBreton, believing the funds to be his and being in need of funds, had to bargain with his son to regain what was rightfully his. Again, giving Gerald Le-Breton the benefit of the doubt, he also thought the funds had been properly paid by Great Southern Life Insurance Company. So the underlying cause of the Release and Compromise was an erroneous belief that the funds belonged to A.J. LeBreton, not to the insurance company.”
Consequently, A.J. asserts that the release and compromise was null and void. While we find this argument worthy of deliberation, we are unable to consider nullity of the release, by virtue of any cause, because such has never been pled by appellant. Moreover, error or mistake has never been pled in the trial court or prior to the appellate brief.
LSA-C.C.P. art. 1005 mandates that error or mistake shall be set forth affirmatively in the answer as an affirmative defense. Article 1005 continued:
“If a party has mistakenly designated an affirmative defense as an incidental demand, or an incidental demand as an affirmative defense, and if justice so re *1309 quires, the court, on such terms as it may prescribe, shall treat the pleading as if there has been a proper designation.”
LSA-C.C.P. art. 856 states:
“In pleading fraud or mistake, the circumstances constituting fraud or mistake shall be alleged with particularity. Malice, intent, knowledge, and other condition of mind of a person may be alleged generally.”
The most generous and liberal reading of the pleadings do not disclose the slightest intent to plead nullity of the release or error in its confection, in either the answer or the third party demand. Moreover, the pleadings were not expanded by any other evidence so as to enable this court, under the broadest set of circumstances, to consider the matter as having been at issue at trial on the merits, or at any time prior to this appeal.
When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised by the pleadings. Upon motion of any party at any time, even after judgment such amendment of the pleadings as may be necessary to cause them to conform to the evidence may be made. LSA-C.C.P. art. 1154. Booty v. Kentwood Manor Nursing Home, Inc. 483 So.2d 634 (La.App. 1 Cir.1985).
In Booty, the court affirmed the trial court’s amendment to the pleadings to include a wrongful death action.[2] See also Wexler v. Martin, 367 So.2d 111 (La.App. 4 Cir.1979).
The present record is devoid of any testimony or other evidence that A.J. attempted to nullify the release due to mistake. A.J. stated that he was aware of the $50,975.00 total of insurance proceeds that Gerald transferred and that Mr. Charbonnet, who prepared the release, also had benefit of this information. Nevertheless, he decided to accept the $19,975.00. The determination of this figure, the method by which it was calculated, was never established by the testimony. A.J. denied that he intended for Gerald to keep the remainder of the money, but when questioned:
Q. Then the next obvious question is, why didn’t you ask him for more?
A. Because that’s all I needed.
Q. That’s all you needed so you were content that he keep the rest.
A. Yes.
Q. And it’s only after Great Southern filed a suit against you that you asked Jerry for more. Is that correct?
A. Right.
Q. When you signed that agreement and compromise in October of 1982 did you have any idea that the insurance company had made an over payment?
A. No, sir.
AJ.’s testimony did not suggest that he would not have signed the release had he known of the over-payment, but rather it is strongly indicated that A.J. needed or wanted the particular sum of money for which he settled at the particular time. The testimony of Mr. Charbonnet and of Gerald do not alter this conclusion. Therefore, we are unable to conclude that there was any evidence upon which to base a finding that the release was null due to error. Since the release was valid, it appears that A.J. has no further cause of action against Gerald in these proceedings. *1310 This includes any action which A.J. may have had against Gerald under LSA-C.C. art. 3005, which reads as follows:
Restoration of things received by virtue of procuration
He is bound to restore to his principal whatever he has received by virtue of his procuration, even should he have received it unduly.
We sympathize with appellant’s position as equity appears to be on his side. However, for the reasons stated above, we are powerless to help him.
Accordingly, the judgment of the district court is affirmed. All costs of this appeal are taxed to appellant.
AFFIRMED

. It was never established in the testimony whether this was a specific claim or merely an amount which A.J. felt was due to him; moreover, it was never shown how A.J. arrived at that figure.

. Art. 1154. Amendment to conform to evidence
When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised by the pleading. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure to so amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby, and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his actions or defense on the merits. The court may grant a continuance to enable the objecting party to meet such evidence.