1BYRNES, Chief Judge.
Plaintiff-appellant, Arnold Jack Rosen-thal, sued the City of New Orleans and Betsy’s Pancake house, Inc. for injuries he sustained in a fall in front of Betsy’s Pancake House on Canal Street on October 24, 1989.
Plaintiffs First Amending Petition added Employers National Insurance Corporation, insurer of Betsy’s Pancake House, Inc., as a defendant.
Plaintiffs Second supplemental and Amending Petition added Elizabeth McDaniel, owner of the premises, as a defendant.
Plaintiffs Third Supplemental and Amending Petition added “K” Construction, Inc. as a defendant.
Before trial, plaintiff voluntarily dismissed the City of New Orleans with prejudice. At trial, plaintiff put on no evidence against defendant “K” Construction, *37 Inc. or Employers National Insurance Corporation.
After a trial on the merits, the trial judge found that the plaintiff had sustained injuries valued at $15,000. The trial judge allocated 80% of the fault to the City, 5% to Betsy’s Pancake House, Inc. and Elizabeth McDaniel “jointly”, and the remaining 15% to the plaintiff. Accordingly, the trial judge condemned Betsy’s Pancake House and Elizabeth McDaniel “jointly, severally and in solido” |?to pay plaintiff the sum of $750 (5% of $15,000), along with costs, including a $200 expert witness fee for Jeffrey Chariot. Plaintiff appealed asking this Court to find Betsy’s Pancake House and Elizabeth McDaniel 85% at fault, and to find the City free from fault. The plaintiff does not assign as error the amount of the damages assessed by the trial court or the allocation of 15% of the fault to the plaintiff.
Betsy’s Pancake House and Elizabeth McDaniel answered plaintiffs appeal, contending that the judgment rendered against them is contrary to the law and the evidence and that the damages awarded by the trial court are excessive.
Plaintiff alleges in paragraph “HI” of his original petition that:
On or about October 24, 1989, at approximately 9:00 a.m., your petitioner, ARNOLD J. ROSENTHAL, was walking on the sidewalk in front of 2536 Canal Street, when suddenly and without warning, he tripped and fell on a hole in the sidewalk. [Emphasis added.]
“Plaintiffs First Amending Petition” re-averred this allegation.
Paragraph “3” of plaintiffs “Second Supplemental and Amending Petition” states that:
3.
By amending paragraph III of the original petition to read as follows:
III.
On or about October 24, 1989, at approximately 8:15 a.m., your petitioner, ARNOLD J. ROSENTHAL, was walking on the sidewalk in front of 2542 Canal Street. Suddenly and without warning, your petitioner tripped in a hole and fell on the sidewalk. [Emphasis added.]
The plaintiff amended his petition a third time, but did not change this allegation.
|3The plaintiff reported the incident to his chiropractor, Wayne Crutchfield, in writing:
I was walking on the sidewalk at Canal Street and Broad on the side of Betsy’s Restaurant, lost my footing, tripped on a large crack in the sidewalk and fell forward right on my face and directly on my nose, breaking my nose and shedding quite a bit of blood.
In his deposition Mr. Rosenthal referred to tripping on a crack and hole in the pavement. Plaintiff made no mention of tripping or losing his balance on the ramp leading up to Betsy’s door. Plaintiffs brief does not contend that the appellees caused the crack or hole in the sidewalk. Nor does plaintiffs brief suggest that the appellees have any liability or legal responsibility for the crack or hole in the sidewalk. The trial judge implicitly agreed. Otherwise he would have assigned more than 5% fault to the ap-pellees.
Mr. Jeffrey D. Charlet, the first witness to testify, was qualified as an expert on the Jefferson Parish building code. When Mr. Charlet started to offer testimony concerning the condition of the ramp, defense counsel entered a timely objection because no proper predicate had been laid *38 and the testimony went beyond the scope of the pleadings. The trial court allowed the testimony in spite of the timely objection. The appellee assigns this as error. A timely objection, coupled with failure to move for an amendment of the pleadings, is fatal to an issue not raised in the pleadings. Schnell v. McKenzie’s Tree Service, Inc., 98-1269, p. 6 (La.App. 5 Cir. 3/30/99), 731 So.2d 922, 925. Our system of fact pleading under La. C.C.P. art. 891 generally requires some reference to the ramp if plaintiff wishes to recover from Betsy’s Pancake House and Elizabeth McDaniel because of its defective condition. Id. None of plaintiffs many pleadings contain any reference, express or implied, to the ramp.
| ¿However, our inquiry does not end here. At the time the trial judge allowed Mr. Charlet’s evidence in, he explained that he would look to subsequent witnesses to establish the proper foundation. The trial judge has broad discretion in the conduct of the trial, including deciding what evidence to admit or exclude. As this was a judge trial, we are not dealing with a potential to prejudice a jury. The plaintiff later testified about the ramp without any contemporaneous objection as to admissibility.
In Wexler v. Martin, 367 So.2d 111, 113 (La.App. 4 Cir.1979), this Court stated that:
Under C.C.P. art. 1154 an issue which has not been raised by the pleadings, but has been tried by the express or implied consent of the parties, must be treated in all respects as if the issue had been raised by the pleadings. Accordingly, the pleadings may subsequently be amended, even after judgment, to reflect the enlargement by evidence introduced without objection, but “failure to so amend does not affect the result of the trial of the issue”.
The purpose of C.C.P. art. 1154 is to recognize the principle that pleadings may be enlarged by evidence introduced without objection. Once such evidence has been introduced, then the pleadings may be formally amended as a housekeeping measure, but formal amendment is not necessary to allow a judgment based on the evidence which enlarged the pleadings. [Emphasis added.]
Additionally, on October 23, 1998, over one year prior to the trial the plaintiff had filed a motion for summary judgment based on the theory that the ramp “violates all relevant building and safety codes.”[1] Therefore, the appellees were on notice that the design of the ramp was an issue in the case. The appellees failed to object to the plaintiffs testimony, arguing only that it was inconsistent |Bwith prior declarations and unreliable. The appellees did not argue prejudice in the lower court or on this appeal. The appellees do not claim surprise and did not move for a continuance in the trial court.
Considering the record as a whole on the issue of the ramp, we find that the failure to formally amend the pleadings to raise the issue of the ramp does not affect the outcome of the trial. La. C.C.P. art. 1154; Wexler, supra.
No one actually saw the plaintiff fall.
On direct examination the plaintiff admitted to his attorney that he had had a stroke that affected his memory.
*39 The plaintiff testified that he had been to Betsy’s twice before and was familiar with the entrance.
On cross-examination the plaintiff gave the following testimony:
A. Well, I had a slight stroke of this— not this year, in ’99, at the commencement exercise at the Super dome, Tulane Commencement. I had a slight — I couldn’t speak for about two or three minutes. They called it a TIA. This was about six or eight months ago.
Q. Now, Mr. Rosenthal, isn’t it true that you fell, you tripped and fell on the sidewalk in front of Betsy’s building on Canal Street?
A. After I lost my balance on the ramp, I was shot forward, and I don’t know if I stepped in a hole or a crack, big crack in the sidewalk, or what it was. I was so shook up at the time, I just know I lost my balance and fell.
When confronted with the allegations in his petition, he said: “No, that’s not the way it happened.” He explained that he had left the drafting of the petition entirely at the discretion of his former attorney, in spite of the fact that he himself | fiis an attorney. It is difficult to believe that the plaintiff, an attorney, took so little interest in his case that he gave his attorney carte blanche to file an original and three amended petitions without consultation as to the substance of the allegations somewhere along the line.
At the close of the case the trial judge suggested that the plaintiff failed to mention the ramp because he was focusing more on the hole. The trial judge went on to explain:
I don’t know how far he went up the ramp. And I will tell you, I doubt if he knows if at all how far he went up the ramp, but fell in a hole. I embrace [sic] he fell in a hole. The question is— [Emphasis added.]
BY MR. HANEMANN:
Not only did he say he fell in a hole ten times in his deposition, but he pleaded that. A crack in the sidewalk. That’s what he said a number of times, he fell in a crack. I tried at his deposition to say [sic] where it happened. He couldn’t say, except for that last time—
BY THE COURT:
He wouldn’t know.
BY MR. HANEMANN:
■ — ■ where he put a circle around it.
Now, there is quite a distance between the edge of that — where that hole is, the one you are talking about, and the news vending machine. Are we to believe that he went flying across six or seven or eight feet, and hit his nose on that—
BY THE COURT:
No, it’s most likely that he stumbled, you know, trying to catch his balance. The normal person, as they are starting to fall, is going to try and catch their balance. You wouldn’t necessarily remember that. Humans don’t. [Emphasis added.]
|7When you are falling, you are concentrating on trying to catch your fall. You are not concentrating on what your feet are doing.
Betsy’s attorney, Mr. Hanemann, then suggested that the trial court was “filling in too many blanks.” We agree.
The trial judge acknowledged that he had no confidence in the plaintiffs memory of how the ramp may have contributed to the accident. The trial judge seemed to rely on the fact that one witness who did not see the witness fall saw him facing in a certain direction after the fall that could be consistent with a loss of balance on the ramp preceding his encounter with the defect in the sidewalk. In *40 view of the record as a whole, this one inconclusive isolated bit of testimony, while it may suggest the possibility that the ramp could have contributed to the accident, falls- far short of carrying plaintiffs burden of proof that the ramp contributed to the fall. In Ambrose v. New Orleans Police Dept. Ambulance Serv., 93-3099 (La.7/5/94), 639 So.2d 216, the Supreme Court stated that:
Because the court of appeal has a constitutional function to perform, it has every right to determine whether the trial court verdict was clearly wrong based on the evidence, or clearly without evi-dentiary support.
The issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong, but whether the fact finder’s conclusion was a reasonable one. Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 882 (La.1993). The reviewing court may not disturb reasonable evaluations of credibility and reasonable inferences of fact when viewed in light of the record in its entirety even though it feels its evaluations are more reasonable. Id. Even though an appellate court may feel its own evaluations and inferences are more reasonable than the fact finder’s, reasonable evaluations of credibility and [«reasonable inferences of fact should not be disturbed upon review where conflict exists in testimony. Id. However, where documents or objective evidence so contradict the witness’s story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness’s story, the court of appeal may find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. Id.
In this case, the plaintiff is an attorney. He filed an original petition and amended it three times. In all four petitions plaintiff reiterated the allegation that he was “walking on the sidewalk in front of 2536 [or 2542] Canal Street, when suddenly and without warning, he tripped and fell on a hole in the sidewalk.” This is consistent with what he reported to his chiropractor following the accident. Plaintiff made no mention of the ramp in his deposition. All of this contradicts the belated claim of the plaintiff that the ramp contributed to his fall.
The plaintiff admitted to having had a stroke that affected his memory. The trial judge acknowledged that he did not rely on the plaintiffs memory as to what occurred on the ramp. If we assume for purposes of argument that the ramp was defective, there is still insufficient evidence that the ramp contributed to the fall, and/or the testimony of the plaintiff at trial is so inconsistent with that of his deposition and so contradicted by documentary evidence (his written statement to his chiropractor and his pleadings) that we find that a reasonable fact finder could not find that the plaintiff had carried his burden of proving his case by a preponderance of the evidence.
For the foregoing reasons, the judgment of the trial court is reversed and judgment is rendered in favor of Betsy’s Pancake House and Elizabeth McDaniel | adismissing plaintiffs claim against them with prejudice. Plaintiff is to bear all costs.

REVERSED.

. By way of comparison, in Robinson v. Benson Motor Co., 98-203, p. 5 (La.App. 5 Cir. 8/25/98), 717 So.2d 1252, 1254, the court, in dicta, stated that it was within the authority of the trial judge to permit an amendment to the pleadings to conform to an affidavit in opposition to a motion for summary judgment.